IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION



FILED

April 7, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9703-CC-00107 |
| | ) | |
| | ) | Sullivan County |
| v. | ) | |
| | ) | Honorable D. Kelly Thomas, Jr., Judge, |
| | ) | sitting by designation |
| JESSEE C. GUDGER, III, | ) | |
| | ) | (Robbery) |
| Appellant. | ) | |

For the Appellant:

Jessee C. Gudger, III Pro Se

Stephen M. Wallace
District Public Defender
  and
R.C. Newton
Assistant Public Defender
P.O. Box 839
Blountville, TN 37617

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
  and
Ruth A. Thompson
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

H. Greeley Wells, Jr.
District Attorney General
  and
Joseph Eugene Perrin
Assistant District Attorney General
P.O. Box 526
Blountville, TN 37617-0526

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Jessee C. Gudger, III, appeals as of right from his conviction by a jury in the Sullivan County Circuit Court for robbery, a Class C felony. The defendant was sentenced as a Range I, standard offender to five years in the custody of the Department of Correction. The trial court ordered the defendant to serve his sentence consecutively to a sentence imposed in an unrelated case. The defendant contends that:

> (1) the evidence is insufficient to support the conviction;
>
> (2) the trial court erred by denying his motion to suppress a statement given to the police;
>
> (3) the trial court erred by denying his special request to instruct the jury on voluntary intoxication; and
>
> (4) the trial court erred by sentencing him to five years in the Department of Correction.

We disagree and affirm the trial court's judgment of conviction.

Detective Jerry Smeltzer testified that he investigated the robbery of the Cherokee Food Mart on Volunteer Parkway on December 12, 1995. He identified a videotape of store surveillance given to him by the manager of the store. He stated that he contacted Dana Ross and Constance Denise Franklin, who was identified as hugging the defendant on the surveillance videotape. Detective Smeltzer testified that he obtained an arrest warrant based upon the information he learned during his investigation. He said that the defendant was arrested at his workplace and taken to the Johnson City Police Department where the defendant gave a statement after being advised of his rights. Detective Smeltzer testified that the defendant was wearing a Dallas Cowboys jacket at the time of his arrest and that he had a Virginia identification card.

The defendant's statement was introduced into evidence. It reflects that the defendant told Detective Smeltzer that he and Dana Ross went to the Cherokee Food Mart on December 12, 1995, at approximately 12:30 a.m. The defendant said that he bought beer and other groceries. The defendant stated that he showed the clerk at the store his Virginia identification card to purchase the beer. He said that he saw Denise Franklin, who hugged him, and some other friends while in the store. The defendant then left the store and later saw Erika Arnold[1] who took him to buy some drugs. The defendant told Detective Smeltzer that while at the apartments where he planned to purchase the drugs, he decided to obtain money. He said that he wrote out a note to give to the clerk and told Arnold to take him to the Cherokee Food Mart to buy cigarettes. The defendant claimed that Arnold did not know that he intended to rob the store. The defendant stated that he turned his coat inside out, walked inside the store, and gave the note to the clerk. He said that after the clerk gave him the money, he left the store in the car driven by Arnold, telling her that he had robbed the store after they left. He stated that he told Arnold that he robbed the store to pay off his drug debt with a drug dealer because the dealer refused to sell him any drugs until he paid the debt. The defendant told Detective Smeltzer that he got Arnold to drive him back to the apartments to purchase some more drugs. He stated that they drove around and smoked crack cocaine and he gave Arnold ten dollars of the stolen money.

On cross-examination, Detective Smeltzer testified that the defendant told him that he did not remember what he wrote on the piece of paper he gave to the clerk. He stated that the note was never recovered because the defendant picked up the note as he left the store. Detective Smeltzer said that he stated in his affidavit of complaint that the clerk told him that the note said to give him the money or he would blow her head off. Detective Smeltzer acknowledged that the statement given by the clerk states

---

[1] The presentence report reflects that Arnold was charged with perjury and accessory after the fact to robbery. She pled guilty to the offenses and received an effective sentence of eighteen months in the custody of the Department of Correction.

that the note said that the defendant would blow her ass off if she did not give him the money.

Angela Parker, a clerk at the Cherokee Food Mart, testified that shortly after 12:00 a.m. on December 12, the defendant along with another man came into the store to purchase beer. She said that the defendant, who was wearing a Dallas Cowboys jacket, showed her a Virginia identification card. Ms. Parker identified the identification card used by the defendant and the jacket worn by the defendant. She stated that the defendant then asked her about the music she was listening to and whether she liked to party. Ms. Parker stated that while the defendant was in the store, Denise Franklin and her boyfriend entered the store. She testified that she spoke to Ms. Franklin and observed her hug the defendant before they all left the store.

Ms. Parker testified that the defendant returned to the store at approximately 3:45 a.m. while she was outside reading the gas pumps. She said that a car pulled into the top parking lot and the defendant got out of the passenger side. Ms. Parker testified that the defendant was wearing the same jacket but he was wearing it inside out. She stated that as she walked back toward the store, she passed the defendant near an ice machine. She said that she saw the defendant's face clearly at that time and that she recognized the defendant as the person who had purchased beer in the store earlier. Ms. Parker stated that the defendant pulled the hood of the jacket over his head. She stated that she said hello to the defendant as she walked into the store and then went behind the cash register.

Ms. Parker testified that the defendant followed her inside the store and asked her whether he could purchase beer. She stated that she and the defendant were the only persons in the store. She said that when she told the defendant that she could not sell beer after 3:00 a.m., the defendant, who was standing two to three feet

4

away from the register, stated, "check this out," as he lay a note on the counter beside the cash register. Ms. Parker stated that the words "give me the f___ing money or I'll blow your ass away" were written in pencil on a half of a piece of paper. She said that the defendant also told her that he was not joking. Ms. Parker testified that she believed that the defendant was serious and that she was afraid for her life. She said that she could not tell if the defendant had anything in his pockets. She testified that she opened the register after reading the note and offered to let the defendant get the money out of the drawer, but he told her to get it for him. She said that she handed the defendant the cash contained in the drawer. Ms. Parker said that she tried to give the defendant the food stamps as well, but the defendant told her that he did not want them. She stated that the defendant instead told her to lift the drawer to make sure there was no cash under the drawer. Ms. Parker testified that the defendant told her not to be stupid and then picked up the note from the counter and walked out the door. She stated that she immediately called the police and that she that she told Detective Smeltzer about the robbery when he arrived.

On cross-examination, Ms. Parker conceded that she initially told Detective Smeltzer that the defendant gave her a Tennessee driver's license, not a Virginia driver's license. She stated that she told Detective Smeltzer that the note said that the defendant would blow off her ass, not her head, if she did not give him the money. She testified on redirect examination that she was scared and shaking when she gave the statement to police.

Teresa Hudson, the manager of the Cherokee Food Mart, testified that she calculated the money that had been stolen from the store. She said that one hundred and fifty dollars was taken. She stated that she gave Detective Smeltzer a videotape of the surveillance of the store. The videotape was played for the jury.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to convict him of robbery. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In the light most favorable to the state, the evidence shows that the defendant entered the Cherokee Food Mart on December 12, 1995, shortly after midnight. The defendant, who was wearing a Dallas Cowboys jacket, had a conversation with Ms. Parker and then showed her a Virginia identification card to purchase beer. The defendant also spoke to and hugged an acquaintance of Ms. Parker before leaving the store. The proof shows that before returning to the store, the defendant wrote a note threatening to harm Ms. Parker if she did not give him the money. The defendant returned to the store around 3:45 a.m., wearing the same jacket inside out and with the hood over his head, and gave the note to Ms. Parker. After she read the note, Ms. Parker, who stated that she was in fear for her life, gave the defendant one hundred and fifty dollars from the register. When the defendant was arrested the next day, he was wearing a Dallas Cowboys jacket. Ms. Parker identified the jacket as the one worn by the robber. The defendant also admitted his guilt in an oral statement given to Detective Smeltzer. Under these circumstances, a rational trier of fact could find the defendant guilty of the offense of robbery beyond a reasonable doubt.

## II.  SUPPRESSION OF STATEMENT

The defendant asserts that the trial court erred by denying his motion to suppress his statement given to police.  The defendant concedes that he was properly arrested and advised of his Miranda rights.  However, he argues that he did not knowingly, voluntarily and intelligently waive his rights.  The state contends that the trial court properly allowed the statement into evidence.  We agree.

Before trial, the defendant filed a motion to suppress the statement he gave to Detective Smeltzer, claiming that the statement was inadmissible because (1) it was the product of an illegal arrest, (2) the defendant was not advised of his Miranda rights, and (3) the defendant was coerced into giving the statement by threats and promises.

At the suppression hearing, Detective Smeltzer testified that he saw the defendant at the Johnson City Police Department after the defendant had been arrested.  He stated that he informed the defendant of the charges against him.  Detective Smeltzer testified that he also told the defendant about the surveillance video, the statement given by Arnold, and the statements of persons identifying the defendant as the person shown on the videotape.  He said that he asked the defendant whether he had been read his rights while at the police station, and the defendant stated that he had not.  Detective Smeltzer stated that he then read the defendant his rights.  Detective Smeltzer testified that the defendant told him that he understood his rights, did not need him to explain further, and did not want to exercise his rights.  He said that the defendant also made statements indicating that he wanted Detective Smeltzer to hurry because he had heard the rights before.  The defendant also signed a waiver of rights form.  Detective Smeltzer testified that the defendant then gave an oral statement.  He said that he transcribed the defendant's answers and that the defendant read and signed the statement without making any corrections.  Detective Smeltzer

denied making any threats or promises. He said that when the defendant asked whether Arnold would be prosecuted, he told the defendant that it was not his decision to make but rather was a decision for the district attorney.

On cross-examination, Detective Smeltzer testified that the defendant told him that he was not under the influence of a drug, although the defendant said that he needed a "fix." Detective Smeltzer stated that he did not believe that the defendant was suffering from symptoms of drug withdrawal. He also denied telling the defendant that he would help him get in a drug rehabilitation program if he would give a statement. Detective Smeltzer testified that after the interview was completed and the statement was signed, the defendant told him that his motive for robbing the store was his drug addiction. Detective Smeltzer stated that in response to the defendant's statement, he told the defendant that the defendant would obtain counseling for his drug problem while in prison or while on probation. He conceded that he initially told the defendant that he was charged with aggravated robbery, but he explained that he believed that the facts justified the charge. On redirect examination, Detective Smeltzer testified that he did not believe that the defendant was under the influence of drugs or alcohol. He described the defendant as rational. He said that the defendant did not appear to have trouble understanding the questioning.

The defendant testified that he dropped out of school in the tenth grade but that he obtained his GED when he was sixteen years old. He said that when he saw Detective Smeltzer at the Johnson City Police Department, Detective Smeltzer showed him a picture of Arnold and told him that he had some statements against him. He said that he was shown the statements but was not given an opportunity to read them. He stated that Detective Smeltzer told him that the best thing that the defendant could do was to cooperate. The defendant stated that he told Detective Smeltzer about his problems with drugs and alcohol and even discussed the possibility of getting

8

treatment, but Detective Smeltzer continued to question him about the robbery. The defendant said that he eventually gave a statement.

The defendant testified that he had problems remembering everything that took place during the interview. He said that he did not remember being read his rights or signing the waiver of rights form. The defendant claimed that he did not understand the rights anyway. The defendant stated that he also did not remember what he said to Detective Smeltzer. He described himself as being out of control and unstable at the time that he gave the statement. He said that he did not know what he was doing when he gave the statement, and he claimed that the statement was not true. The defendant also claimed that he gave the statement because of the discussion he had with Detective Smeltzer regarding the possibility of drug treatment.

On cross-examination, the defendant testified that he was under the influence when he gave the statement. He said that he had used crack cocaine the day before his arrest and that he had smoked a marijuana cigarette while at work just before being arrested. The defendant conceded that he was not under the influence of crack cocaine at the time he gave the statement. He also conceded that he gave Detective Smeltzer some of the information contained in the statement. The defendant admitted that his signature appears on the waiver of rights form and the statement. He acknowledged that Detective Smeltzer read him his rights, and he said that he may have told Detective Smeltzer that he already knew his rights. The defendant admitted that he had previously been convicted of a felony involving drugs. He also admitted that Detective Smeltzer never threatened him, but he claimed that Detective Smeltzer pressured him to give a statement by telling him he could lose his job and by promising him that he would get treatment.

9

At the conclusion of the hearing, the trial court overruled the defendant's motion to suppress the statement. The trial court found that the defendant was advised of his rights before he gave a statement. It also found that the defendant stated that he understood his rights, and knew what he was doing. The trial court noted that although the defendant claimed that his memory was not good, the defendant was able to work and was not under the influence of cocaine. It found that although the defendant had smoked one marijuana cigarette, the defendant was not under the influence, stating that the defendant's own testimony regarding things that he remembered suggested that the defendant was not intoxicated.

On appeal, the trial court's findings of fact at the conclusion of a suppression hearing will be upheld unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The defendant bears the burden of demonstrating that the evidence preponderated against the trial court's factual findings. Id. However, the application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 628-29 (Tenn. 1997).

In this case, the defendant failed to establish that the evidence preponderated against the trial court's factual determinations. The evidence shows that Detective Smeltzer testified that the defendant stated that he understood his rights before signing the waiver of rights form. He said that he believed the defendant was rational and appeared to understand what was taking place. He said that the defendant did not appear to be under the influence of alcohol or drugs. We agree that this evidence demonstrates that the defendant knowingly, voluntarily and intelligently waived his rights and gave a statement. Therefore, we conclude that the defendant's motion to suppress the statement was appropriately denied.

### III. INSTRUCTION ON VOLUNTARY INTOXICATION

The defendant contends that the trial court erred by denying his special request for an instruction on voluntary intoxication. He argues that an instruction was necessary given the circumstances surrounding the robbery and his statement to police. The state responds that there is no evidence to warrant an instruction on voluntary intoxication. We hold that the trial court did not err by refusing to instruct the jury regarding voluntary intoxication.

In criminal cases, the trial court has a duty to charge the jury on all of the law that applies to the facts of the case. State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by jury. State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987).

Voluntary intoxication is not a defense. T.C.A. § 39-11-503(a). However, "intoxication, whether voluntary or involuntary, is admissible in evidence if it is relevant to negate a culpable mental state." Id. This court has stated that "there must be evidence that the intoxication deprived the accused of the mental capacity to form specific intent . . . . The determinative question is not whether the accused was intoxicated, but what was his mental capacity." Harrell v. State, 593 S.W.2d 664, 672 (Tenn. Crim. App. 1979). If raised by the proof, the trial court is required to instruct the jury regarding intoxication even if a request for an instruction has not been made. See State v. Williamson, 919 S.W.2d 69, 80 (Tenn. Crim. App. 1995).

We do not believe that the issue of voluntary intoxication is fairly raised by the proof presented at trial. Viewed in the light most favorable to the giving of an instruction, the proof showed that the defendant bought beer and drugs before robbing the store. However, there was no evidence introduced to show that the defendant consumed the beer or used the drugs before he robbed the store. Nor was there any

11

proof relating to whether the defendant was deprived of the mental capacity to form the requisite specific intent. The defendant's statement to Detective Smeltzer that he and Arnold rode around after the robbery and smoked crack cocaine is the only evidence relating to the defendant's drug use. However, any evidence of the defendant's intoxication <u>after</u> the robbery occurred does not show that the defendant was deprived of the capacity to form the requisite specific intent for committing the crime. Accordingly, we conclude that an instruction on voluntary intoxication was not warranted.

## IV.  SENTENCING

The defendant challenges the length of his sentence. He acknowledges that the trial court carefully weighed enhancement and mitigating factors as required by T.C.A. § 40-35-210. However, the defendant argues that the trial court gave too much emphasis to the applicable enhancement factors by initially increasing the defendant's sentence to six years before reducing the sentence to five years. He contends that a four-year sentence was more appropriate. The state responds that the trial court followed the sentencing principles and that a sentence of five years is warranted under the circumstances of the case. We hold that the trial court properly sentenced the defendant to five years in the custody of the Department of Correction.

Significantly, the defendant does not contest the trial court's application of the enhancement and mitigating factors. Rather, he essentially asserts that the trial court should not have given as much weight to the applicable enhancement factors. However, the weight to be afforded an existing factor is left to the trial court's discretion as long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; <u>State v. Moss</u>, 727 S.W.2d 229, 237 (Tenn. 1986); <u>see</u> <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

The presentence report reflects that the then twenty-five-year-old defendant has an adult criminal record consisting of convictions for possession of cocaine with the intent to distribute, driving under the influence, reckless driving, two counts of possession and distribution of liquor to a person under twenty-one years of age, and two counts of driving without a driver's license. It states that the defendant committed the present offense while on probation for the offense of possession of cocaine with the intent to distribute. The report also reflects that as a juvenile, the defendant was adjudicated guilty of criminal trespass, grand larceny, tampering with a vehicle, violation of a curfew, possession of stolen property, three counts of petit larceny, and two counts of possession of a controlled substance. The defendant was placed on probation for his conduct and was also sent to a juvenile detention center.

At the conclusion of the sentencing hearing, the trial court sentenced the defendant as a Range I, standard offender to five years in the custody of the Department of Correction to be served consecutively to the sentence imposed in Virginia for possession of cocaine. In sentencing the defendant, the trial court applied the following enhancement factors as listed in T.C.A. § 40-35-114:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (13)(C) The felony was committed while on probation from a prior felony conviction; and
>
> (20) The defendant was adjudicated to have committed delinquent acts as a juvenile that would have constituted felonies if committed by an adult.

In mitigation, the trial court found that the defendant's criminal conduct did not cause personal injury, but it gave the factor little weight given the defendant's threat of injury in robbing the victim. See T.C.A. § 40-35-113(1). The trial court also considered the defendant's lack of prior convictions for violent felonies and his substance abuse problems. See T.C.A. § 40-35-113(13). The trial court noted as well

13

that the defendant had suffered abuse and neglect as a child at the hands of a parent who also was an addict. Id. The trial court concluded that the applicable enhancement factors warranted an increase in the sentence to six years, but it reduced the sentence to five years given the evidence of mitigation. The record supports the sentence imposed.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
Joseph M. Tipton, Judge

CONCUR:


_____
Gary R. Wade, Judge


_____
William M. Barker, Judge

14