IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 21, 2005 Session

**JAMES LAVELL CARRETHERS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2000-A-495     J. Randall Wyatt, Jr., Judge**

-------------------

**No. M2004-01792-CCA-R3-PC - Filed November 18, 2005**

-------------------

The petitioner, James Lavell Carrethers, appeals from the Davidson County Criminal Court's dismissal of his petition for post-conviction relief from his conviction for second degree murder, a Class A felony.   He contends that the trial court erred in instructing the jury and that he received the ineffective assistance of counsel.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and J. C. MCLIN, J., joined.

Charles E. Walker, Nashville, Tennessee, for the appellant, James Lavell Carrethers.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Michael Damian Rohling, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Davidson County grand jury indicted the petitioner for first degree murder, but the jury convicted him of the lesser included offense of second degree murder.  The trial court sentenced the petitioner to eighteen years in the Department of Correction.  The petitioner appealed, and this court affirmed his conviction.  See State v. James L. Carrethers, No. M2001-01503-CCA-R3-CD, Davidson County (Tenn. Crim. App. Oct. 2, 2002), app. denied (Tenn. Feb. 24, 2003).

The evidence presented by the state at the trial showed that the victim's live-in boyfriend, Ronald Woodard, wanted her killed because she had threatened to inform parole officials of his drug dealing after learning that he was involved in a romantic relationship with another woman.  Mr. Woodard told Johnny "Little Johnny" Maupin to kill the victim.  The petitioner was to assist in committing the crime in exchange for drugs.

The petitioner made a pre-trial statement to law enforcement, admitting that he and "Little Johnny" went to the victim's home on the night of the murder.  He said he kicked down the door to

the victim's home, but he claimed "Little Johnny" shot the victim. Shortly after the murder, the petitioner went to a friend's home where he was seen washing blood from a T-shirt. The next day, he sold the murder weapon, which the police recovered during their investigation.

At the trial, the petitioner recanted his pre-trial statements, claiming he did not go to the victim's home that evening. He insisted that he sold the murder weapon because Mr. Woodard asked him to dispose of it and that Mr. Woodard was attempting to frame him for the crime. He also said he gave the pre-trial statement because the police led him to believe that he would be treated as a witness rather than a perpetrator. The jury convicted the defendant of second degree murder.

On February 4, 2004, the petitioner filed a pro se petition for post-conviction relief in the Davidson County Criminal Court alleging that the trial court erred by not instructing the jury on all lesser included offenses and that he received the ineffective assistance of counsel. The trial court appointed the petitioner counsel, and thereafter the petitioner filed an amended petition for post-conviction relief containing the same two grounds for relief as in the original petition.

The petitioner contended in the amended petition that the trial court erred by not instructing the jury on all lesser included offenses. The petitioner also alleged twelve instances of the ineffective assistance of counsel: failure to challenge the trial court's refusal to instruct the jury on lesser included offenses; failure to inspect or develop footprint evidence on the door of the victim's home; failure to file a pretrial motion to exclude the introduction of testimony about the door; failure to investigate, develop, and interview witnesses properly; failure to meet with the petitioner adequately; failure to advise the petitioner of his constitutional rights; failure to develop potential defenses; failure to discuss trial strategies and tactical matters with the petitioner; failure to impeach prosecution witnesses by prior inconsistent statements; failure to introduce the prior criminal record of Ronald Woodard; failure to interview, investigate, and subpoena a potential defense witness; and failure to interview, investigate, and subpoena a 9-1-1 caller.

At the hearing for post-conviction relief, the petitioner's trial attorney testified that he had handled "probably a thousand criminal cases, [and] over fifty murder cases." He said he met with the petitioner at least twelve times. He said he obtained substantial damaging evidence through discovery, including the petitioner's videotaped admission of participation in the crime. In light of this evidence, the petitioner's attorney said that he "strongly encouraged" the petitioner to plead guilty and that the petitioner came twice before the court to enter a guilty plea. The petitioner, however, ultimately refused and requested a jury trial. The petitioner's attorney said he and the trial court advised the petitioner of the possible ranges of punishment for first degree murder, second degree murder, and facilitation of first degree murder.

The petitioner's attorney said that he moved to have the petitioner's videotaped statement suppressed but that the trial court denied the motion. He said he interviewed all potential witnesses in preparation for trial with the exception of Lisa Hayes Sanders, whom he was unable to locate and whom the state did not present as a witness at the trial. The petitioner's attorney said that due to the overwhelming evidence of the petitioner's criminal responsibility in the murder, the petitioner was very lucky not to have been convicted of first degree murder.

The petitioner's attorney said he successfully convinced the trial court to apply mitigating factors to the petitioner's sentence. He said that the petitioner received an eighteen-year sentence because of the mitigating factors and that the court otherwise would have sentenced the petitioner to between twenty and twenty-five years.

On cross-examination, the petitioner's attorney said the petitioner never denied kicking down the door of the victim's home. He said the state's analysis of the door did "not come up with anything, any prints that matched Mr. Carrethers, or anything." The petitioner's attorney said that the state did not introduce the door as evidence at trial and that he had never personally inspected the door in question. He repeated that he was unable to locate Ms. Sanders. He acknowledged that Ms. Sanders would have been a helpful defense witness because her description of the assailant fleeing the victim's home did not match the petitioner. He said Ms. Sanders' statement that she knelt down beside the victim may not have been consistent with Mr. Woodard's statement that he was kneeling down beside the victim.

The petitioner's attorney said he did subpoena Ronald Woodard to testify for the defendant even though he knew Mr. Woodard had a criminal record and was currently incarcerated on drug charges. He said he could not recall if the petitioner's criminal record was mentioned at the trial but that it "may have" been. The petitioner's attorney said he could not recall whether he interviewed an anonymous 9-1-1 caller.

Metropolitan Nashville Police Department Detective Roy Dunaway testified that he was the lead investigator in the case. He said the police took into evidence the front door of the victim's home because there was a "clearly visible" footprint on the door. He said that the defendant's shoes appeared to match the footprint and that the defendant's shoes were seized for comparison. He said that Officer Ray Rader of the Metropolitan Police Department Laboratory concluded the defendant's shoe matched the footprint on the door but that the police apparently did not report this finding to the prosecution. Detective Dunaway said that he did not testify at the trial about any testing of the door, that he did not bring the door to trial, and that no other testing took place other than the footprint comparison. He said that he remembered Ms. Sanders from the investigation but that he could not recall whether he took her statement.

On cross-examination, Detective Dunaway said the defendant confessed to kicking in the door to the victim's home. He said the police recovered the murder weapon from the person to whom the petitioner sold it.

The petitioner testified that he wanted the door in question introduced at trial. He said he did confess to kicking down the door to the victim's home but only because he felt coerced by the police. The petitioner said that he wished he had not made this statement and that he wanted the door to be introduced at the trial in order for the jury to consider whether his statement was truthful. The petitioner claimed that the police performed further testing on the door and that his trial attorney should have presented these arguments on his behalf.

On cross-examination, the petitioner repeated that he falsified his pre-trial statement and that he only made the statement under duress. The petitioner stated that his trial attorney should have

3

introduced the substance of other conversations he had with the police. The petitioner claimed that the records of these particular conversations were destroyed by Detective Dunaway.

The petitioner testified that he only met with his trial attorney two or three times at the pre-trial detention facility and a few other times at court appearances. He said his trial attorney did not give him a copy of portions of his case file. The petitioner said he sent his trial attorney two letters requesting information about his case but that since his appeal, he has not seen his attorney or received the requested information.

In dismissing the petitioner's petition for post-conviction relief, the trial court found that the petitioner waived the issue regarding the failure to instruct the jury on the lesser included offenses because he did not raise the issue in his direct appeal. With regard to the petitioner's allegations of the ineffective assistance of counsel, the trial court found that the attorney was not constitutionally deficient for accepting the trial court's jury instructions as to the lesser included offenses, for failing to obtain the door and examine it for footprint evidence, for failing to file a motion in limine concerning the footprint evidence, for his case investigation and witness preparation, for the number of meetings he had with the petitioner, for his development of available defenses, for his tactical decisions at the trial, or for his cross-examination of witnesses. The trial court also found that the petitioner had failed to prove he was prejudiced by his counsel's case investigation and witness preparation, development of available defenses, tactical decisions at the trial, or cross-examination of witnesses.

On appeal, the petitioner contends the trial court erred in dismissing his petition for post-conviction relief. He maintains that the trial court erred in instructing the jury and that he received the ineffective assistance of counsel. The state responds that the petitioner has waived the jury instruction issue by failing to present it on direct appeal. Concerning the ineffective assistance of counsel claim, the state contends that the petitioner's attorney's performance was not constitutionally deficient and that the petitioner failed to prove any prejudice.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

## I. JURY INSTRUCTIONS

The petitioner contends the trial court erred in instructing the jury. He claims that the trial court should have charged the jury on the lesser included offenses of voluntary manslaughter, reckless homicide, and criminally negligent homicide and argues that its failure to do so was not harmless error. The state claims that the petitioner has waived this issue by failing to present the argument on direct appeal. We agree with the state.

4

Initially, we note the petitioner did not raise this issue in his direct appeal. Our Post-Conviction Procedure Act provides that absent certain circumstances inapplicable to the petitioner's case, a petitioner waives a post-conviction issue on appeal if he or she could have presented the issue on direct appeal but failed to do so. See T.C.A. § 40-30-106(g). The petitioner has waived this issue.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel. He claims his attorney failed to preserve the jury instruction issue for appeal, failed to investigate or develop evidence that the footprint on the door did not match the petitioner, failed to file a motion in limine to exclude any testimony relating to the door until after the door had been admitted into evidence, failed to investigate and interview potential defense witnesses properly, failed to develop potential defenses, failed to discuss trial strategies with the petitioner, failed to meet with the petitioner adequately, and failed to impeach Detective Roy Dunaway and Ronald Woodard with prior inconsistent statements and attack the credibility of Mr. Woodard based upon his prior criminal record. The state responds that the petitioner's attorney's performance was not constitutionally deficient and that the petitioner has failed to prove the necessary prejudice. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to prove either prong will result in a denial of post-conviction relief. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

### A. Failure To Preserve Jury Instructions Issue For Appeal

The petitioner contends that he received the ineffective assistance of counsel when his attorney failed to object to the trial court's jury instructions on lesser included offenses and failed to preserve the issue for appeal. He claims that the offenses of voluntary manslaughter, reckless homicide, and negligent homicide are lesser included offenses of first degree murder and that his attorney's failure to request these instructions resulted in prejudice. The state agrees that voluntary manslaughter, reckless homicide, and negligent homicide are lesser included offenses of first degree

5

murder. However, it contends the petitioner did not receive the ineffective assistance of counsel because no facts existed to support these lesser included offense instructions.

Voluntary manslaughter is a knowing killing resulting from "a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." T.C.A. § 39-13-211. Reckless homicide is a reckless killing. T.C.A. § 39-13-215. Criminally negligent homicide is a killing resulting from criminally negligent conduct. T.C.A. § 39-13-212.

In criminal cases, the trial court has the duty to charge the jury on all of the law that applies to the facts of the case. See State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies the defendant his constitutional right to a trial by jury. See State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). Our supreme court has held that an offense is a lesser included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> > (1) a different mental state indicating a lesser kind of culpability; and/or
> > (2) a less serious harm or risk of harm to the same person, property or public interest; or
> (c) it consists of
> > (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> > (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> > (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999).

If an offense is a lesser included offense, then the trial court must conduct the following two-step analysis in order to determine whether the lesser included offense instruction should be given:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine

> if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Burns, 6 S.W.3d at 469.  In State v. Allen, 69 S.W.3d 181 (Tenn. 2002), our supreme court continued to develop this area of the law and stated, "The trial court must provide an instruction on a lesser-included offense supported by the evidence even if such instruction is not consistent with the theory of the State or of the defense.  The evidence, not the theories of the parties, controls whether an instruction is required."  69 S.W.3d at 187-88.  The court then concluded that in the context of Burns part (a) lesser included offenses, the "general rule" is that "evidence sufficient to warrant an instruction on the greater offense also will support an instruction on the lesser offense . . . .  In proving the greater offense the State necessarily has proven the lesser offense because all of the statutory elements of the lesser offense are included in the greater."  Id. at 188.  The supreme court in Allen also stated that a trial court's failure to instruct on lesser included offenses is subject to constitutional harmless error analysis.  Id. at 190-91.

Our supreme court has previously held that an offense is a Burns part (a) lesser included offense if the lesser included offense differs from the greater offense only in respect to the requisite mental state:

> Because lesser levels of the statutory hierarchy of mental states (intentional, knowing, reckless, and criminally negligent) are included within the greater levels pursuant to Tenn. Code Ann. § 39-11-301(a)(2) (2000), an intent element which differs from the intent element of the charged offense only by one of these lower-hierarchy mental states is not actually treated as a differing element.

State v. Rush, 50 S.W.3d 424, 430 (Tenn. 2001).   This court, citing Rush, has held that second degree murder, reckless homicide, and criminally negligent homicide are all Burns part (a) lesser included offenses of premeditated first degree murder.  State v. Walter Wilson, No. W2001-01463-CCA-R3-CD, Shelby County (Tenn. Crim. App. Sept. 4, 2002), app. denied (Tenn. Jan. 27, 2003).

Concerning the failure to instruct on the offense of voluntary manslaughter, we note that voluntary manslaughter is a lesser included offense of premeditated first degree murder under Burns part (b).  See State v. Dominy, 6 S.W.3d 472, 477 n.9 (Tenn. 1999).  Therefore, the mandatory requirement of Allen does not apply, and the question on review is whether the evidence supported the instruction.  We conclude it does not.  We note the record is devoid of any evidence that the defendant or any of his confederates acted under "a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner" as required in T.C.A. § 39-13-211.  See Burns, 6 S.W.3d at 469.  The petitioner has failed to prove by clear and convincing evidence that he was prejudiced by his attorney's failure to preserve the voluntary manslaughter jury instruction issue for appeal.

Concerning the failure to instruct on reckless homicide and criminally negligent homicide, we conclude that pursuant to our supreme court's pronouncements in Allen, the trial court should

7

have instructed the jury on these lesser include offenses. We hold, though, that the petitioner has failed to prove prejudice because the trial court's error in failing to instruct the jury on reckless homicide and criminally negligent homicide was harmless beyond a reasonable doubt. At the trial, the state's evidence showed that the petitioner was a willing participant in a murder for hire scheme and that the petitioner admitted his involvement. The petitioner defended by recanting his pre-trial statements, claiming that he was not involved in the crime, that he had sold the murder weapon because Mr. Woodard asked him to do so, and that Mr. Woodard had framed him for the crime. We conclude that in this context, the trial court's failure to instruct the jury on reckless homicide and criminally negligent homicide was harmless beyond a reasonable doubt.

### B. Failure to Investigate the Footprint Evidence Properly

The petitioner contends his attorney was ineffective for failing to investigate the footprint evidence on the door. He claims that he told his attorney the footprint was not his and that his attorney failed to introduce any evidence negating the state's claim that the footprint on the door was consistent with the petitioner. The state claims the petitioner has failed to show any prejudice resulting from his attorney's failure to develop evidence relating to the footprint. We agree with the state.

A petitioner who asserts that he received the ineffective assistance of counsel based upon his attorney's failure to investigate a case properly bears the burden at the post-conviction hearing of demonstrating what that investigation would have revealed. Owens v. State, 13 S.W.3d 742, 756 (Tenn. Crim. App. 1999). At the post-conviction hearing, the petitioner failed to present any evidence indicating that the footprint on the door was not his. He has failed to carry his burden to prove this allegation by clear and convincing evidence, and he is not entitled to relief on this issue.

### C. Failure to File a Pre-Trial Motion to Exclude Testimony Concerning the Footprint

The petitioner contends his attorney was ineffective by failing to file a pretrial motion to exclude any mention of the footprint evidence on the door until the door was properly admitted into evidence. The state contends the petitioner has failed to prove prejudice. We agree with the state.

At the post-conviction hearing, the petitioner failed to explain how his attorney's failure to file a pretrial motion to exclude testimony about the door until it was admitted into evidence resulted in prejudice. See Owens, 13 S.W.3d at 756. We conclude the petitioner has failed to carry his burden to prove this contention by clear and convincing evidence, and he is not entitled to relief on this issue.

### D. Failure to Develop and Introduce Testimony

The petitioner contends that his attorney was ineffective by failing to develop and introduce into evidence testimony from various potential witnesses. He claims testimony from Lisa Sanders would have shown that her description of the suspect she saw fleeing the scene of the crime did not match the description offered into evidence by Ronald Woodard. He also claims that testimony

8

should have been introduced from the person who placed the 9-1-1 call. The state contends that the petitioner has failed to establish that his attorney was ineffective or that he was prejudiced.

In <u>Black v. State</u>, 794 S.W.2d 752, 757-58 (Tenn. 1990), our supreme court stated the following:

> It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. The same is true regarding the failure to call a known witness. In short, if a petitioner is able to establish that defense counsel was deficient . . . the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by <u>Strickland v. Washington</u>.

Concerning the person who placed the 9-1-1 call, the petitioner failed to introduce testimony from this person into evidence at the post-conviction hearing. We conclude that under <u>Black</u>, he has failed to establish the necessary prejudice to prevail on this claim.

Concerning the potential testimony of Lisa Sanders, the petitioner failed to introduce into evidence at the post-conviction hearing any testimony from Ms. Sanders. He did, however, introduce the following statement of Ms. Sanders given to the police:

> We were coming off of Muf. Rd, heard two gun shots, and someone yelling. We turned to go see who was yelling got to Lincoln and Trimble and seen [someone] laying in the yard/ Also as we were coming down Licoln [sic] we / me and the boyfriend seen someone a man run up the street up Licoln [sic] wearing light color or possibly gray shorts a dark color shirt (Black male). I got out of the car sit beside [the victim] and tried to get her stable.
> x Lisa G. Sanders 9-2-99

The petitioner also introduced at the post-conviction hearing the following statement of Ronald Woodard given to the police:

> I was coming down Lincoln and heard gun shots. I seen Sarah Owens, my wife, in the yard. So I went up the street (South on Lincoln) to find him. He had on a white T-shirt - that's about all I saw.

9

Initially, we note that Mr. Woodard also testified at the trial that the person he saw was wearing a white T-shirt. We conclude, though, that the petitioner has failed to prove by clear and convincing evidence that his attorney's performance was deficient. At the post-conviction hearing, the petitioner's attorney testified that he tried but was unable to locate Ms. Sanders, and the trial court found that the petitioner had adequately attempted to locate Ms. Sanders. We conclude the record does not preponderate against the trial court's findings that the petitioner's attorney's performance was not deficient. The petitioner is not entitled to relief on this issue.

## E. Failure to Develop Potential Defenses

The petitioner contends his attorney was ineffective by failing to develop potential defenses. The state does not respond to this contention. In any event, we note the petitioner has failed to allege what, if any, defenses should have been developed or pursued. We therefore conclude he has failed to carry his burden of proving by clear and convincing evidence that his attorney's performance was deficient. He is not entitled to relief on this issue.

## F. Failure to Discuss Trial Strategies

The petitioner contends his attorney was ineffective by failing to discuss trial strategies and/or tactical decisions with him. The state does not respond to this contention. We note the petitioner has failed to argue this issue in his appellate brief. We conclude he has waived this issue. See T.R.A.P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

## G. Failure to Meet with the Petitioner

The petitioner contends his trial attorney was ineffective for failing to meet with him adequately in preparation for trial. The state contends the attorney's performance was not deficient. We agree with the state.

At the post-conviction hearing, the petitioner's attorney testified that he met with the petitioner at least twelve times. The trial court found that the attorney's performance in meeting with the petitioner was adequate. We conclude the record does not preponderate against the trial court's finding, and the petitioner is not entitled to relief on this issue.

## H. Failure to Impeach Witnesses

The petitioner contends his trial attorney was ineffective for failing to impeach the credibility of certain witnesses for the state. He claims his attorney should have attacked the credibility of Detective Dunaway and Ronald Woodard with prior inconsistent statements. He also claims his attorney should have attacked the credibility of Mr. Woodard by introducing into evidence Mr. Woodard's prior criminal history. The state contends that the petitioner has failed to specify what statements from either witness were inconsistent, that the attorney's performance was not deficient, and that the petitioner has failed to prove prejudice.

10

Concerning the attorney's failure to attack the credibility of Detective Dunaway and Mr. Woodard with prior inconsistent statements, the petitioner has failed to state in his brief what statements were inconsistent with the trial testimony. We conclude he has waived this issue. See Tenn. Ct. Crim. App. R. 10(b).

Concerning the issue of introducing Mr. Woodard's prior criminal record into evidence, we note that at the trial, the petitioner called Mr. Woodard to the stand to testify that although he saw someone running from the scene, that person was not the petitioner. This testimony was favorable to the petitioner. We are unable to discern why the petitioner believes his attorney's failure to attack the credibility of his own witness in this instance constitutes the ineffective assistance of counsel. In any event, we conclude the record does not preponderate against the trial court's finding that the petitioner's attorney's performance was not deficient. The petitioner is not entitled to relief on this issue.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

 

_____

JOSEPH M. TIPTON, JUDGE