IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 9, 2007 Session

## STATE OF TENNESSEE v. JANICE BURNETTE

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 05-01-0113   J. Weber McCraw, Judge**

---

**No. W2006-01203-CCA-R3-CD  - Filed June 1, 2007**

---

The defendant, Janice Burnette, was convicted of theft of property valued between $1,000 and $10,000, and was sentenced to three years, suspended after service of thirty days with the balance on probation.  On appeal, she argues that: (1) there was a material and highly prejudicial variance between the indictment and the evidence presented at trial; (2) there was a material variance between the indictment and the jury charge; (3) the trial court erred in denying her request that the jury be instructed she was indicted for theft of pseudoephedrine not general merchandise; (4) the charge given to the jury was insufficient; (5) the indictment was flawed and the trial court cured it by giving the jury the general theft charge; (6) she was denied her 6th Amendment right to face her accusers and be adequately prepared to defend herself against the charge of theft of general merchandise; (7) the state did not meet its burden of proof as to theft of pseudoephedrine products; and (8) the state's closing argument was improper.  After our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MᶜLɪɴ, J., delivered the opinion of the court, in which Nᴏʀᴍᴀ MᴄGᴇᴇ Oɢʟᴇ, J., joined and Dᴀᴠɪᴅ G. Hᴀʏᴇs, J., filed a concurring opinion.

Wayne T. DeWees, Bolivar, Tennessee, for the appellant, Janice Burnette.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### BACKGROUND

-1-

This case involves the defendant's stealing property from her employer, Dollar General, over the course of approximately six months. For these actions, the defendant was indicted for theft of property, to-wit: pseudoephedrine, valued between $1,000 and $10,000; and possession of substances with the intent to convey such substances to another for use in the manufacture of a Schedule II controlled substance. The jury ultimately convicted her of the theft charge but found her not guilty of the possession with intent to convey charge. She was sentenced to three years, suspended after service of thirty days confinement with the balance on probation.

Testimony from the defendant's January 2006 trial was as follows. Judy Nichols Pitts, a district manager for Dollar General, testified that the defendant was employed at the Middleton Dollar General from November 11, 2004 to May 9, 2005. Mrs. Pitts testified that she received an anonymous call through the loss-prevention hotline that led to an investigation at the Middleton store. Mrs. Pitts recalled that she also received a phone call from the Middleton Chief of Police concerning information he had regarding a "situation" at the Middleton store. Mrs. Pitts said that she turned over the product inventory control to the Asset Protection Division and they determined there was an unusual loss of pseudoephedrine products at the Middleton store. Mrs. Pitts stated that the pseudoephedrine products were arriving in the store but coming up missing without being sold. Mrs. Pitts noted that, at that time, the pseudoephedrine products were kept on an "incap" or rack where anyone in the store had access to them. Mrs. Pitts testified that the defendant was investigated regarding the loss of pseudoephedrine products, and on May 9, 2005, the defendant gave a statement to Greg Outlaw with Asset Protection in her presence.

Gregory Outlaw, Asset Protection Supervisor with Dollar General, testified that his job involved doing audits of the stores and anything related to loss prevention. In the course of an investigation into the loss of products containing pseudoephedrine at the Middleton store, Mr. Outlaw interviewed the defendant on May 9, 2005, and had her give a handwritten statement. The defendant's statement was as follows:

> My name is Janice Marie Burnette. . . . I have worked at the store since November 11, 2004 as a cashier. During the last twenty-four weeks I have been sliding merchandise to five people in the amount of $20.00 every other week. The total loss I have caused Dollar General is at least $1200.00. I did this because three of the people would give me meth for the merchandise. I knew this was wrong and I am truly sorry for it. I have a habit but I promise I will do better. I understand the serious nature of the crime I have committed against Dollar General. I have written this statement of my own free will without any threats or promises being made to me. . . .

Mr. Outlaw noted that the defendant admitted to sliding products over the counter without charge, but she did not mention pseudoephedrine. However, Mr. Outlaw recalled that it was the loss of pseudoephedrine products that generated the investigation at the Middleton store.

On cross-examination, Mr. Outlaw testified that he did not tell the defendant that any

statement she made would not affect her job. Mr. Outlaw stated that he also investigated Josh Wilson, the assistant store manager, whose duties included unloading the delivery truck. Mr. Outlaw did not know whether the defendant ever assisted in unloading the delivery truck. Mr. Outlaw said that his investigation did not show that Sudafed[1] was stolen off the delivery truck in-transit before it reached the Middleton store. Mr. Outlaw admitted that when the delivery truck arrived at the store they did not check each item off the invoice when unloading, but he explained that another employee witnessed Sudafed arriving at the store. Mr. Outlaw stated that Josh Wilson was responsible for the Sudafed after it got into the store, but all employees were responsible for "protecting it from being stolen or given away to other individuals." Mr. Outlaw acknowledged that Josh Wilson pled guilty to taking "a lot" of Sudafed. Mr. Outlaw stated that the defendant did not mention anything about methamphetamine or Sudafed during her interview, but they talked about "pseudoephedrine products in the store" prior to her giving a statement. On redirect examination, Mr. Outlaw testified that his investigation of Josh Wilson led to his investigation of the defendant. He said that, as far as the dollar amount, Josh Wilson took substantially less product than the defendant admitted to taking. Mr. Outlaw stated that anybody who worked at the store had access to the pseudoephedrine products.

Steven Stanley, a Captain with the Whiteville Police Department, testified that pseudoephedrine is the main ingredient in methamphetamine.

The defendant testified that she started working at the Dollar General in November 2004, and her primary duties were cashiering and putting up stock. The defendant stated that Sudafed arrived on a delivery truck and she never unloaded the truck. She said that when the Sudafed was unloaded it was put into a medicine cabinet behind the cash register that had to be unlocked with a key. The defendant never touched the Sudafed because she did not have a key, but she recalled that "Leon, Josh and Denise" had keys. She explained that if a customer wanted Sudafed she had to get a manager to unlock the cabinet and watch while she rang it up. The defendant admitted that she gave a statement to Mr. Outlaw and Mrs. Nichols, and said that before giving her statement Mr. Outlaw told her that he already knew she had been sliding[2] merchandise out of the store. The defendant said that she admitted to sliding products to her friends, but not Sudafed. The defendant acknowledged that a couple of people gave her methamphetamine in exchange for sliding merchandise. She stated that she did not make methamphetamine nor was she involved with anyone who made methamphetamine.

On cross-examination, the defendant said that Mr. Outlaw did not specifically tell her that he was questioning her about Sudafed missing from the store; she thought it was just about missing merchandise in general. The defendant stated that Mr. Outlaw told her that she would not lose her job or go to jail if she confessed. She reiterated that she slid toilet paper, shampoo, soap, and other general merchandise but nothing containing pseudoephedrine.

---

[1]Sudafed is the brand name of a cold medication containing the ingredient pseudoephedrine.

[2]The defendant explained that "sliding" refers to letting someone go with merchandise without paying for it.

## ANALYSIS

On appeal, the defendant argues that: (1) there was a material and highly prejudicial variance between the indictment and the evidence presented at trial; (2) there was a material variance between the indictment and the jury charge; (3) the trial court erred in denying her request that the jury be instructed she was indicted for theft of pseudoephedrine not general merchandise; (4) the charge given to the jury was insufficient; (5) the indictment was flawed and the trial court cured it by giving the jury the general theft charge; (6) she was denied her 6th Amendment right to face her accusers and be adequately prepared to defend herself against the charge of theft of general merchandise; (7) the state did not meet its burden of proof as to theft of pseudoephedrine products;[3] and (8) the state's closing argument was improper.

Initially, we note that the defendant's issue (8), regarding the state's closing argument, is waived because the defendant offered no citation to authorities or argument other than the conclusory statement, "The State[']s closing arguments were so improper, that they tainted the trial with unfairness and denied due process of the defendant. As set forth in Volume 2, Transcript of Evidence page 98." *See* Tenn. R. App. P. 27; Tenn. Ct. Crim. App. R. 10(b).

The majority of the defendant's remaining issues are confusing, conclusory, and arguably also subject to waiver. However, her allegations seem to boil down to: (1) the state presented insufficient proof of theft of pseudoephedrine products; (2) because of the insufficient proof, there was a material and highly prejudicial variance between the indictment and the proof at trial; and (3) the trial court took it upon itself to cure that variance by giving the jury the general theft charge, which resulted in her essentially being convicted of theft of general merchandise instead of theft of pseudoephedrine products. We will address these allegations in turn.

### Sufficiency

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); see Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of

---

[3]The defendant also argues that the state did not sustain its burden of proof with regard to the charge of possession with intent to convey for manufacture of a controlled substance. Respectfully, this assertion is irrelevant because the jury acquitted her of that offense.

the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

The evidence at trial showed that Mrs. Pitts became aware of a theft situation at the Middleton Dollar General store. Mrs. Pitts turned the product inventory control over to the Asset Protection Division and it was determined that there was an unusual loss of pseudoephedrine products at the store. Mr. Outlaw conducted an investigation into the loss of pseudoephedrine products, and his investigation led him to interview the defendant. During that interview, Mr. Outlaw and the defendant talked about "pseudoephedrine products in the store," after which, the defendant gave a statement admitting to sliding merchandise in exchange, in part, for methamphetamine. Although the defendant maintained that she did not know she was being questioned regarding the theft of pseudoephedrine products and thought she was only being questioned about sliding general merchandise, the jury chose not to believe the defendant's testimony. Again, issues concerning the credibility of the witnesses were resolved by the jury as the trier of fact. *Bland*, 958 S.W.2d at 659. In the light most favorable to the state, the direct and circumstantial evidence was sufficient to convict the defendant of theft of pseudoephedrine products.

**Variance**

The indictment at issue reads as follows:

[The defendant] on various dates between November 15, 2004 and May 9, 2005 pursuant to a common scheme or plan, in Hardeman County, Tennessee, and before the finding of this indictment, did unlawfully, feloniously and knowingly exercise control over property, to-wit: Pseudoephedrine products, a more particular description thereof being to the Grand Jurors unknown, valued at over one thousand dollars ($1,000) but less than ten thousand dollars ($10,000), of Dollar General Store 716 without their effective consent, with the intent to deprive said Dollar General Store 716 thereof, in violation of T.C.A. 39-14-103 . . . .

The purpose of an indictment is to provide the defendant with notice of the offense charged, provide the court with an adequate ground upon which a judgment may be entered, and provide the defendant with protection against double jeopardy. *See State v. Byrd*, 820 S.W.2d 739, 741 (Tenn.

-5-

1991). A variance between the indictment and the proof will be considered fatal if the variance is both material and prejudicial. *See State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984).

The defendant argues that there was a fatal variance between the indictment and the proof because the state did not put on proof that she stole pseudoephedrine products. However, the record indicates otherwise. In this case, the indictment recited the statutory language and listed the relevant code section, which was sufficient to put the defendant on notice of what she was charged. The state was required to prove what was in the indictment – theft of pseudoephedrine products, and could do so with direct and circumstantial evidence.[4] As noted earlier, the proof at trial showed that it was the theft of pseudoephedrine that instigated the investigation, the defendant was questioned during the course of that investigation, and the defendant gave a statement admitting to sliding merchandise during a conversation regarding "pseudoephedrine products in the store." Therefore, in light of the evidence offered by the state as to the defendant's guilt of theft of pseudoephedrine, it is our view there was no variance between the indictment and the proof at trial.

**Jury Instruction**

The trial court determined it would charge the jury the pattern instruction for theft of property, but allow the parties to refer to the specific property the defendant was accused of stealing in closing arguments. During closing arguments, both parties told the jury that the defendant was charged with theft of products containing pseudoephedrine. The court then instructed the jury that:

> The defendant is charged in the indictment with theft of property valued between $1,000.00 and $10,000.00 . . . . For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt . . . that the defendant knowingly obtained or exercised control over property owned by the Dollar General Store, and that the defendant did not have the owner's effective consent, and that the defendant intended to deprive the owner of the property.

The trial court also charged the jury with respect to direct and circumstantial evidence and its duty to weigh and analyze the evidence.

During its deliberations, the jury submitted a question to the court, inquiring, "Does the first part of the indictment mean only theft of pseudoephedrine or does it refer to general merchandise as well?" To which the court responded that, "It will be for the jury to determine the clear meaning of the indictment. The jury should consider each word contained in the indictment and give clear meaning to each word."

---

[4]We acknowledge an unpublished opinion by this court, *State v. Jerry Sheets*, No. 03C01-9205-CR-00167, 1993 WL 4106 (Tenn. Crim. App., at Knoxville, Jan. 12, 1993), in which we held that the state must prove possession of parlay cards if it indicts the defendant for "possess[ion of] gambling devices, namely, parlay cards." The court said that not holding the state to its burden of proving what was in the indictment was a variance that prejudiced the defendant's substantial rights. *Id.* at *3. *Sheets* is distinguishable from the case at hand because in *Sheets* there was a total lack of evidence that the defendant possessed parlay cards so the state tried to proceed by showing possession of any gambling device. Whereas here, the state did not abandon or try to enlarge its specific charge against the defendant and presented circumstantial evidence that the defendant stole pseudoephedrine products.

"[A] defendant has a constitutional right to a correct and complete charge of the law." *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994) (quoting *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). The trial court should properly instruct the jury on the law governing issues raised by the evidence introduced at trial. *See State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). Because the defendant was charged with theft of pseudoephedrine products, the trial court should have instructed the jury that the state had to prove that the defendant stole pseudoephedrine products. *See Jerry Sheets*, 1993 WL 4106. Despite the trial court's failure to give a specific charge, when questioned, the court referred the jury back to the indictment and told it to carefully consider every word. We presume the jury followed the court's instruction absent evidence to the contrary. *See State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). Thus, any error in the jury charge was harmless because the trial court cured the error by instructing the jury to refer to the indictment.

It follows that the defendant was convicted of theft of general merchandise to wit "pseudoephedrine products" because the state presented circumstantial proof of the defendant's theft of pseudoephedrine products; the parties reiterated to the jury that the defendant was charged with theft of pseudoephedrine products; and the court instructed the jury to look at the indictment and give meaning to each word.

## CONCLUSION

Based on the aforementioned reasoning and authorities, we affirm the judgment of the Hardeman County Circuit Court.

_____
J.C. McLIN, JUDGE