IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2008

## STATE OF TENNESSEE v. ODIS KAYAUNCE HANTZ

**Appeal from the Circuit Court for Chester County**
**No. 06-357A      Roy B. Morgan, Jr., Judge**

---

**No. W2007-02053-CCA-R3-CD  - Filed May 30, 2008**

---

The defendant, Odis Kayaunce Hantz, appeals his Chester County Circuit Court conviction of aggravated robbery, alleging insufficiency of the evidence.  We hold that the evidence presented at trial was sufficient and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Angela J. Hopson, Jackson, Tennessee, for the appellant, Odis Kayaunce Hantz.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; James G. Woodall, District Attorney General; and Rolf Hazlehurst, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On March 22, 2007, a Chester County Circuit Court jury found the defendant guilty of aggravated robbery, a Class B felony.  The trial court sentenced the defendant to 10 years in the Department of Correction as a Range I, standard offender.

Aaron Figueroa testified that he was working at Premier Manufacturing on the evening of December 17, 2005.  One of Mr. Figueroa's car tires had been slashed earlier that day, so after work he went to the parking lot to change it.  He testified that, while he changed the tire, "two men approached [him] . . . and robbed [him] at gunpoint. [One man] robbed [him] at gunpoint where the other one went through [his] pockets and got [his] money out."  Mr. Figueroa testified that he recognized both men.  He knew one assailant, Marquis Mickens, "from high school."  Mr. Figueroa testified that he had no doubt the second individual was the defendant because he had worked with the defendant for a few months at Premier.  Mr. Figueroa testified, "He worked six days a week and I'd seen him every night."

Mr. Figueroa testified that the defendant grabbed him and pushed him into his car while the co-defendant pointed the gun. The defendant went through his pockets and took his wallet. The robbers then shut Mr. Figueroa inside the car, told him to wait 15 minutes before getting out, and ran away. Mr. Figueroa testified that after 15 minutes, he went back inside Premier Manufacturing and told his supervisor what had happened. The supervisor called the police, and Mr. Figueroa gave them a description, as well as the name of the co-defendant. Mr. Figueroa testified that he did not know the defendant's name, but he told the police he knew his face because he had seen him from work. He had no doubts about the identity of his attackers, and a few days later, he picked them both from separate photographic lineups.

On cross examination, Mr. Figueroa testified that he had never had any prior conflict with the defendant at work. They worked different shifts and only saw each other in passing. Mr. Figueroa testified that, although the parking lot was not well lit, he had parked directly under a light on the evening in question, and that the lighting did not impair his ability to identify his assailants.

Jason Crouse testified that he was a deputy in the Chester County Sheriff's Department. He responded to the robbery call involving Mr. Figueroa. After Mr. Figueroa identified the co-defendant as one of the perpetrators, the police searched the co-defendant' residence and recovered a weapon.

On cross examination, Deputy Crouse testified that his belief that the recovered gun was the one used in the robbery was based on the co-defendant' father's saying that he had seen his son with the gun.

Jason Rhodes testified that he was a patrolman for the Chester County Sheriff's Department on the evening of the robbery. He saw two men fitting the description provided by Mr. Figueroa and tried to stop them, but the suspects ran away when Officer Rhodes stopped his vehicle. Officer Rhodes identified the defendant as one of the two individuals he saw that evening.

On cross examination, Officer Rhodes testified that when he first saw the suspects it was dark and that the two men were "[p]robably between 20 and 30 yards" from him. However, he shone his spotlight on the defendant and "could see him full."

Henderson Police Department investigator Ronnie Faulkner testified that the victim identified the co-defendant from a six-person photo lineup. The victim did not know the defendant by name, but based on his description, Mr. Faulkner found 128 possible matches in the police database of prison booking photos. Mr. Faulkner testified that he scrolled through those photos with the victim, and the victim identified the defendant. Officers then went to Premier Manufacturing and confirmed that the defendant had previously been employed there.

Gregory Mickens, the father of the co-defendant, testified that he told the police that at the time of the robbery, his son was with the defendant. On cross examination, Mr. Mickens admitted that the offense occurred so long ago that he does not exactly recall what he told the police.

Nellie Richardson, administrative assistant at Premier Manufacturing, testified that according to company records, the defendant had been an employee, intermittently, for a total of about ten months.

The defendant testified that on the date of the robbery he was at home with Brian Brooks, a friend, discussing the problems he had in his relationship at the time. He testified that he and Mr. Brooks were together from 6:00 p.m. until 11:30 p.m. He acknowledged knowing the co-defendant "from back in the days" but denied being with him on the day of the robbery. The defendant denied possessing a gun at the time of the robbery and denied ever having in his possession the specific gun retrieved from the co-defendant's apartment. He acknowledged working for Premier Manufacturing during the relevant dates but denied ever seeing or talking to the victim.

Brian Brooks testified that he was at the defendant's residence the evening of the robbery to help calm him down because he had just found out his girlfriend was bisexual and was seeing a woman. He testified that they drank some beers, talked, and played video games. Mr. Brooks left when the defendant "got to fussing at [him]."

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

A criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); *Winters*, 137 S.W.3d at 654; however, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). "In other words, '[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt.'" *State v. McAfee*, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987) (quoting *Crawford*, 470 S.W.2d at 613).

This court, in determining the sufficiency of the evidence, should not reweigh or reevaluate the evidence, *see State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990), and questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not the appellate court, *see State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Also, this court may not substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the

evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

As it pertains to the present case, aggravated robbery is "robbery . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." *See* T.C.A. § 39-13-402(a)(2) (2003). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* at 39-13-401.

The defendant alleges that the evidence was insufficient to support his conviction for aggravated robbery. We disagree. The victim identified the defendant as one of the men who robbed him at gunpoint. A police officer testified that shortly after the crime, he spotted the defendant, who matched the victim's description of his attackers, and that the defendant ran from him after being ordered to stop. The credibility of eyewitness testimony in identifying the defendant as the perpetrator of a crime is a question of fact for the jury to determine upon consideration of all competent proof. *State v. Strickland,* 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).

In addition to the eyewitness' identification, Gregory Mickens testified that his son was with the defendant on the night of the robbery, and Officers Crouse and Rhodes testified that the gun used in the robbery was found at Mickens' residence. From this evidence, a rational jury could have found beyond a reasonable doubt that the defendant was the perpetrator of the crime. We conclude, therefore, that the evidence, viewed in the light most favorable to the State, was sufficient to sustain the defendant's conviction for aggravated robbery.

_____
JAMES CURWOOD WITT, JR., JUDGE