**STATE of Tennessee, Appellee,**

v.

**Floyd McAFEE, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

June 17, 1987.

James H. Bostick, Asst. Public Defender, Memphis, for appellant; A.C. Wharton, Jr., Shelby County Public Defender, Memphis, of counsel.

W.J. Michael Cody, Atty. Gen. & Reporter, Norma Crippen Ballard, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., James J. Challen, III, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

JONES, Judge.

The defendant, Floyd McAfee, was convicted of grand larceny and found to be an habitual criminal by a jury of his peers. After his motion for a new trial was denied by the trial court the defendant appealed as of right to this Court pursuant to Rule 3(b), Tenn.R.App.P.

In this Court the defendant contends the evidence is insufficient to support his conviction for grand larceny as well as a finding that he is an habitual criminal, and the trial court committed error in refusing to clarify its instructions when the jury requested a clarification during the habitual criminal phase of the proceedings.

## SUFFICIENCY OF THE EVIDENCE

On the afternoon of December 7, 1985, an employee of the Peabody Hotel observed a black male, later identified as the defendant, enter a restricted area near the rear of the hotel, and go into the kitchen area. The employee, knowing the defendant did not work for the hotel, advised a security officer of what she had observed. After following the defendant up the stairs leading to the mezzanine floor, the employee observed the defendant leave the Venetian Room with a long, brown mink coat draped over his arm. Moments later a security guard arrived. The employee advised the guard of what she had just seen and the route taken by the defendant.

The security officer followed the defendant. After leaving the hotel the guard ordered the defendant to stop. The defendant began running, and the security guard gave chase. The guard eventually lost contact with the defendant in the vicinity of the Greyhound Bus Station.

The defendant was subsequently discovered in the back of a taxicab by a second security guard. The defendant still had the fur coat draped over his arm. After the security guard removed the coat from the vehicle the defendant again ran. A brief chase ensued before the defendant was arrested by a police officer.

It was established that the fur coat was owned by a lady attending a wedding reception in the hotel; and she had not given the defendant permission to take or use her coat.

■ When the defendant challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct as well as circumstantial evidence. *Farmer v. State*, 208 Tenn. 75, 343 S.W.2d 895, 897 (1961); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn.1977).

■ In determining the sufficiency of the evidence we do not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Nor may we substitute our inferences for those drawn by the trier of fact in circumstantial evidence cases. *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn.Crim.App.1978). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, supra.

■ Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage*, supra; *State v. Grace*, supra; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In *Grace* our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d at 476.

■ Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, *State v. Grace*, supra, the accused has the burden of proving to this Court that the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, supra. This Court will not disturb a verdict of guilt on the facts unless the evidence

contained in the record is insufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, supra.

■ A criminal offense may be established exclusively by circumstantial evidence. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958); *Duchac v. State*, 505 S.W.2d 237 (Tenn.1973); *State v. Lequire*, 634 S.W.2d 608, 614 (Tenn.Crim.App. 1981); *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim.App.1983). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford*, supra, 470 S.W.2d at 613.

■ We are of the opinion there is an abundance of evidence contained in the record from which a rational trier of fact could conclude that the appellant is guilty of grand larceny beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Tuggle*, supra.

### FAILURE TO CLARIFY CHARGE

The defendant was arrested and processed under the name of "Larry Banks." The indictment accused "Floyd McAfee, also known as Larry Bates," with the offense of grand larceny.

The second count of the indictment accused the defendant of being an habitual criminal. It was alleged that the defendant, also known as Larry Bates, had been previously convicted of four (4) prior offenses. The convictions consisted of (a) receiving stolen property under the value of $100, (b) grand larceny, (c) simple robbery, and (d) grand larceny.

In the receiving stolen property case and both grand larceny cases the indictments charged "Floyd McAfee" with the commission of the respective offenses. The indictment for the robbery conviction charged "Floyd McAfee, also known as Larry Bates," with the commission of the offense. No evidence was offered to establish that the defendant, Floyd McAfee, was known by the alias "Larry Bates." The defendant denied ever using the alias of "Larry Bates."

The defendant admitted he pled guilty to and was convicted of receiving stolen property on March 1, 1975 and grand larceny on March 15, 1977. He denied that he was the person convicted of robbery and grand larceny in the two remaining cases.

At the conclusion of the sentencing hearing the trial judge charged the jury on the law applicable to the habitual criminal case. The court read T.C.A. § 39-1-801 to the jury. This statute provides:

T.C.A. § 39-1-801. *Persons defined as habitual criminals.*—Any person who has either been three (3) times convicted within this state of felonies, not less than two (2) of which are among those specified in §§ 39-2-103, 39-2-111, 39-2-112, 39-2-640, 39-6-417(a)(1)(A), 40-20-112, or were for a crime punishable by death under existing law, but for which the death penalty was not inflicted, or who has been three (3) times convicted under the laws of any other state, government or country, of crimes not less than two (2) of which, if they had been committed in this state, would have been among those specified in said §§ 39-2-103, 39-2-111, 39-2-112, 39-2-640, 39-6-417(a)(1)(A), 40-30-112 or would have been punishable by death under existing laws, but for which the death penalty was not inflicted, shall be considered, for the purposes of this part, and is declared to be an habitual criminal; provided that petit larceny shall not be counted as one of such three (3) convictions, but is expressly excluded; and provided, further, that each of such three (3) convictions shall be for separate offenses, committed at different times, and on separate occasions.

No further instructions were given regarding the number of prior convictions necessary before a defendant qualifies as an habitual criminal.

■ After the jury commenced its deliberation it returned with a question. The jury asked the trial court: "Do we consider yesterday's guilty verdict with the other convictions?" Defense counsel requested that the trial court clarify its charge by instructing the jury an accused must have been previously convicted of three of the requisite offenses, exclusive of the triggering offense, before he can be sentenced as an habitual criminal. See *Evans v. State*, 571 S.W.2d 283, 285 (Tenn.1978). The assistant district attorney general opposed clarification of the charge, and urged the trial judge to simply tell the jury it should reread the charge. The trial court refused to clarify its charge,[1] and answered the jury's question in the following manner: "Members of the jury, you are instructed to read and re-read the charge in this case, for therein lies the answer to your question 2. If I give you a 'yes' or 'no' answer to your question, it would be improper." [2]

■ Before a defendant may be sentenced to life as an habitual criminal, the jury must find beyond a reasonable doubt that the defendant had been previously convicted of at least three (3) of the offenses enumerated in T.C.A. § 39-1-801 at the time the defendant committed the principal or triggering offense. *Evans v. State*, 571 S.W.2d 283, 285 (Tenn.1978).

1. The trial judge was apparently laboring under the erroneous thought that the principal or triggering offense could be counted as one of the three prior convictions alluded to in the statute.

2. The trial judge expressed some reluctance to giving the jury a supplemental charge in this case. We point out to the trial judge he has the authority to give a jury a supplemental instruction in response to a question. See *Leach v. State*, 552 S.W.2d 407, 408 (Tenn.Crim.App. 1977). There is ample authority to support this rule. See, for example, *Laury v. State*, 187 Tenn. 391, 394-395, 215 S.W.2d 797, 798 (1948); *State v. Hayes*, 631 S.W.2d 450, 451 (Tenn.Crim. App.1981); *State v. Badgett*, 693 S.W.2d 917, 920 (Tenn.Crim.App.1985).

See *State v. Freeman,* 669 S.W.2d 688, 693 (Tenn.Crim.App.1983); *State v. Cole,* 629 S.W.2d 915, 917 (Tenn.Crim.App.1981). In other words, the defendant must meet the requirements of T.C.A. § 39–1–801 when he commits the principal or triggering offense. *Evans v. State,* supra. In *Evans* our Supreme Court said:

> ... [T]o bring the defendant within the ambit of the [habitual criminal] statute, the State must show that he was an habitual criminal *at the time he committed the principal offense.* Of necessity, such a showing must be made independently of that offense. Therefore, we hold that the present offense, the punishment of which the State seeks to enhance, may not be used as one of the convictions necessary to bring the defendant within the definition of an habitual criminal. 571 S.W.2d at 285.

The language of the statute incorporated in the trial court's charge is confusing and lends itself to an interpretation that the principal or triggering offense can be used as one of the three prior convictions alluded to in the statute. Prior to *Evans v. State,* supra, our Supreme Court interpreted the language of the statute in such a manner. In *Pearson v. State,* 521 S.W.2d 225, 227 (Tenn.1975), the Supreme Court said "[t]he third conviction of one of the prescribed felonies is the triggering mechanism which brings the habitual criminal statute into play." In *Evans* the late Mr. Justice Henry in a concurring opinion stated he felt "a form of moral compulsion to confess error in the conclusion reached by this Court in *Pearson v. State....*" 571 S.W.2d at 288. If five distinguished and knowledgeable justices can make a slip of the tongue in this regard, can twelve laymen be expected to understand and apply such a statute? We think not. See *Poole v. State,* 61 Tenn. 288, 293–294 (1872).

▪ The accused in a criminal proceeding "is entitled to a clear and distinct exposition of the law of his case as applicable to the facts." *Strady v. State,* 45 Tenn. 300, 307 (1868). See also *Crawford v. State,* 44 Tenn. 190, 194 (1867); *Potter v. State,* 85 Tenn. 88, 89, 1 S.W. 614, 618 (1886). Nothing short of this will "satisfy the demands of justice," *Crawford v. State,* supra, or a defendant's constitutional right of trial by jury. *Strader v. State,* 210 Tenn. 669, 682, 362 S.W.2d 224, 230 (1962); *State v. Staggs,* 554 S.W.2d 620, 626 (Tenn.1977).

▪ It is the duty of the trial judge, without request, to give the jury proper instructions as to the law governing the issues raised by the nature of the proceedings and evidence introduced during the course of the trial. *Poe v. State,* 212 Tenn. 413, 416, 370 S.W.2d 488, 489 (1963); *State v. Martin,* 702 S.W.2d 560, 564 n. 5 (Tenn. 1985). Simply reading a statute to the jury, when, as here, the statute is ambiguous and open to more than one interpretation, does not satisfy "the demands of justice" or the defendant's constitutional right of trial by jury. In *Poole v. State,* supra, the Supreme Court held that when a word or phrase contained in a statute has "a technical meaning, ... it is the duty of the Court ... to give such meaning to the jury in the charge, and not merely to use the language" because "[t]he jury is not presumed to understand ... [the word or phrase] any more than it is to understand any other technical term." 61 Tenn. at 294.

▪ In the case *sub judice* the trial judge should have gone further and explained that a defendant must have been previously convicted of three of the enumerated offenses when he committed the principal or triggering offense.[3] This is especially true when the jury returned with a question addressing this issue and defense counsel brought the deficiency in the charge to the court's attention. The supplemental instruction given by the trial court did nothing more than compound the problem and leave the jury to interpret the statute as it saw fit.

---

**3.** See T.P.I.—Crim. § 32.01 (West 1978), p. 313, where it is said the State must prove beyond a reasonable doubt that "the defendant has been convicted of three (3) or more felonies prior to [the] commission of the offense which was the basis of the present conviction you have just rendered."

The verdict returned by the jury at the conclusion of the habitual criminal sentencing hearing "was not the result of the deliberate judgment of the jury after a full, fair and proper exposition of the law." *Potter v. State,* 85 Tenn. 88, 89, 1 S.W. 614, 618 (1886). Therefore, the defendant is entitled to a new sentencing hearing since the error of the trial court was of prejudicial dimensions. Considering the whole record, we are of the opinion the error involved a substantial right, and more probably than not affected the jury's decision to find that the defendant qualified as an habitual criminal. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The defendant's conviction for grand larceny is affirmed. The judgment of the trial court finding the defendant is an habitual criminal and sentencing him to life imprisonment is reversed; and this cause is remanded to the trial court for a new trial on the habitual criminal count of the indictment.

DUNCAN and DAUGHTREY, JJ., concur.