# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 25, 2010

## STATE OF TENNESSEE v. RON "COTTON" SEALS

**Appeal from the Criminal Court for Hawkins County**
**No. 07-CR-0254     John F. Dugger, Jr., Judge**

—————————

**No. E2008-02178-CCA-R3-CD - Filed August 27, 2010**

—————————

A Hawkins County Criminal Court jury convicted the defendant, Ron "Cotton" Seals, of one count of possession with intent to deliver .5 grams or more of cocaine; one count of possession with intent to deliver dihydrocodeinone, a schedule II controlled substance; one count of possession with intent to deliver alprazolam, a schedule IV controlled substance; one count of possession with intent to deliver one-half ounce or more of marijuana; one count of maintaining a dwelling where controlled substances are used, kept, or sold; and one count of possession of drug paraphernalia. The trial court imposed a total effective sentence of 20 years' incarceration. In this appeal, the defendant contends that the evidence was insufficient to support his convictions and that his sentence is excessive. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

James F. Taylor, Rogersville, Tennessee, for the appellant, Ron "Cotton" Seals.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Douglas Godbee and Alex Pearson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The convictions in this case arose when the Hawkins County Sheriff's Office discovered large quantities of cocaine, marijuana, and cash during a February 11, 2007 search of the camper in which the defendant was residing.

At trial, Hawkins County Deputy Sheriff Brad Depew, who testified that he was the "case agent" in charge of the investigation, stated that he obtained and executed a search warrant on the defendant's Bray Road residence in Surgoinsville on February 11, 2007. He stated that prior to executing the warrant, he and other officers conducted "several hours of surveillance, watching people come and go, just keeping an eye on the residence to see what the traffic was." Deputy Depew stated that they "observed several vehicles coming in a very short period of time and they would leave. Some of them would come back more than once and stay five or ten minutes and then leave and come back." He described the defendant's residence as "a two-story house under construction. The outside of the house is pretty well done. The inside is a shell. . . . [S]urveillance of [the defendant showed that he] had a thirty-five foot fifth wheel [camper] set up . . . probably fifteen to twenty f[ee]t from the residence. That's where he was living." Deputy Depew said the fully-furnished camper had both electricity and running water but that "the water was froze[n]."

Deputy Depew testified that he executed the warrant at 7:20 p.m. The officers "split into two teams for the house . . . and the camper," with Deputy Depew leading the team into the house. He stated that after he saw that the house was empty, he "followed the team into the camper." Inside, officers found the defendant and four other individuals in the relatively small kitchen/living area of the camper. Deputy Depew described the process of dealing with those present during the execution of the warrant: "[W]e try to secure everybody, get them patted down for a weapon, just secure the location. . . . Most of the time in a house we'll move them to one room of the house where we can search without them being in the way. The camper was kind of hard." Deputy Depew patted down the defendant and found "a bag of powder cocaine, a canister of crack cocaine, a crack pipe, and" $465 cash.

Deputy Depew testified that upon entering the camper he saw "two pots of the small canisters of crack cocaine that was cooking[,] . . . . a lid of crack cocaine that was drying[,] . . . . a crack pipe on the table[, and] . . . . a bag of cocaine laying [sic] beside the stove." He stated that "[c]rack is processed cocaine. It's been cooked." He described the process of transforming powder cocaine into crack cocaine: "You take powder cocaine, water and baking soda and you heat it up together and it makes crack. . . . It'll dry hard and you take a knife and then you cut it into little squares." He stated that the defendant had cocaine in every stage of the process: the powder, the syrup, and the hardened stage.

Officers found more drug paraphernalia and crack cocaine inside the kitchen cabinets along with a "Food Saver" that was used to seal the cocaine into baggies. Deputy Depew discovered two such sealed baggies in a safe under the bed, one contained six ounces of cocaine and one contained $2,871. Officers found Brillo pads that had been torn into pieces, which, according to Deputy Depew, are "used for filters in the crack pipes," as well

-2-

as a set of digital scales with a white residue on them. A large safe located in the corner of the camper contained $1,200.

Deputy Depew testified that the defendant had set up a sophisticated security surveillance system in the bedroom of the camper, with two cameras pointed outside. A black safe found in the bedroom contained a large quantity of green plant material. Officers also found several pills in the camper. All of the suspected cocaine, plant material, and objects with residue were sent to the Tennessee Bureau of Investigation ("TBI") for testing. Deputy Depew testified that the street value of the cocaine obtained from the defendant's residence was $23,000.

Hawkins County Deputy Sheriff Gary Murrell, who participated in the surveillance and search, testified that "numerous people kept coming to the residence" while the officers were conducting the search of the defendant's residence. He stated that some of the people were detained and let go while others were arrested. He recalled that a total of 25 to 30 people came to the residence during the search.

Gabriel Craig, a former TBI forensic scientist, testified that, with the exception of a single bag, all bags containing white powder recovered from the defendant's residence tested positive as cocaine. The largest bag contained 168.4 grams of cocaine, and three smaller bags contained "at least eighteen grams" of cocaine. Another bag contained 7.1 grams of a "loose," "rock-like" substance that tested positive as cocaine base. The rock-like substance in a purple container found on the defendant's person was .7 grams of cocaine. Mr. Craig testified that the crack cocaine in syrup form was 36.2 grams. He testified, "The total amount for all the cocaine, the rock and the powder, was a total of [230.4] grams."

Mr. Craig stated that the green plant material tested positive as 20.7 grams of marijuana, the round orange tablets tested positive as Alprazolam, which was "more or less Xanax," and the other sixteen tablets tested positive as dihydrocodeinone, which was "Oxycodone." The State exhibited to Mr. Craig's testimony the TBI laboratory reports.

The State rested its case, and the defense called Jerry Burton, who was present at the defendant's residence during the search. Mr. Burton claimed that he was only at the defendant's residence to help the defendant "unthaw [sic] his water." He stated that he placed "an electric heater underneath [the defendant's] camper trying to get his water unthawed [sic]." He said he had been there approximately two hours when the police arrived.

During cross-examination, Mr. Burton admitted that he was sitting inside the camper when officers arrived and that he was only a short distance from the stove. He

denied bringing any drugs or drug paraphernalia into the camper, where he conceded the defendant had been living. Mr. Burton acknowledged that several other people came and went while he was at the defendant's residence.

Based upon this evidence, the jury convicted the defendant of possession with intent to deliver .5 grams or more of cocaine, possession with intent to deliver dihydrocodeinone, possession with intent to deliver alprazolam, possession with intent to deliver one-half ounce or more of marijuana, maintaining a dwelling where controlled substances are used, kept, or sold, and possession of drug paraphernalia.

In this appeal, the defendant challenges the sufficiency of the convicting evidence and the propriety of the sentences imposed by the trial court.

*I. Sufficiency of the Evidence*

The defendant contends that the evidence presented at trial was insufficient to support his convictions, primarily on the basis that the evidence showed the presence of other individuals in the defendant's home at the time of the search. The State submits that ample evidence undergirds the convictions. We agree with the State.

We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654. Although a criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); *Winters*, 137 S.W.3d at 654, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971). "In other words, '[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt.'" *State v. McAfee*, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987) (quoting *Crawford*, 470 S.W.2d at 613).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the

weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(2), (4) (2006). The term "possession" embraces both actual and constructive possession. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). To "constructively possess" a drug, a person must have "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Id.* (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). Additionally, "it may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-17-419. It is also an offense "for any person . . . [k]nowingly to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft or other structure or place that is resorted to by persons using controlled substances." *Id.* § 53-11-401(a)(5).

We need not tarry long over the defendant's claim. The evidence adduced at trial established that officers executing a search warrant on the camper where the defendant was living discovered large quantities of powder, syrup, and crack cocaine along with a large quantity of marijuana, cash, and pills. Deputy Depew found .7 grams of cocaine on the defendant's person alone, and the total amount of cocaine exceeded 200 grams. In addition, officers found a crack pipe, digital scales, and a stem cleaner used to clean crack pipes. The presence of a sophisticated security system in the defendant's bedroom, crack cocaine in various stages of production, and large amounts of cash pointed to the defendant's operating a large scale cocaine manufacturing and sales operation from the camper. That officers present outside the residence observed some 25 to 30 people arrive at the defendant's residence during the short time officers were there to search supports this conclusion. The presence of others inside the residence does nothing, in this case, to diminish the defendant's culpability.

*II. Sentencing*

The defendant argues that the trial court erred by imposing the maximum sentence within the applicable range for each of his convictions and by ordering partially consecutive service of the sentences. The State contends that the defendant's criminal record, qualification as a professional criminal, and his leadership role in the offenses

justified the effective 20-year sentence. We agree with the State.

When considering a challenge to the length of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing decision, the trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

In imposing the maximum sentence within the range for each of the

defendant's convictions, the trial court relied on enhancement factor (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior[] in addition to those necessary to establish the appropriate range"; enhancement factor (2), that "[t]he defendant was a leader in the commission of an offense involving two (2) or more criminal actors"; and enhancement factor (8), that "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." *See* T.C.A. § 40-35-114(1), (2), and (8). The court concluded that a fully incarcerative sentence was necessary given the defendant's extensive criminal history and previous failed attempts at probation. *See id.* § 40-35-103(1)(A), (C). Finally, the court imposed partially consecutive sentencing based upon its conclusion that the defendant was a professional criminal. *See id.* § 40-35-115(b)(1) ("The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that . . . [t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood[.]"). The court explained,

> The [c]ourt finds by a preponderance of the evidence that you were a professional criminal. You had a large amount of cocaine. You had surveillance equipment that was high tech watching your property. You had . . . many people that came to buy drugs from you during this search of this property. You had several thousand dollars cash. . . . You had crack cocaine that was cooking on the stove. You also had some that had been cooked and was being cut up, which shows that you were basically a professional criminal. You knew what you were doing. You were making a livelihood at this at that time. You had a two-story house under construction and a fifth wheel camper.

The court also noted that the defendant indicated to the preparer of the presentence report that he was unemployed. In addition to its finding that the defendant was a professional criminal, the trial court concluded that consecutive sentencing was justified by the defendant's extensive criminal history. *See id.* § 40-35-115(b)(2) (permitting trial court to impose consecutive sentences upon a finding that "[t]he defendant is an offender whose record of criminal activity is extensive").

The record supports the sentencing decision of the trial court. The presentence report, which was exhibited to the sentencing hearing, established that the defendant had nearly 30 prior criminal convictions dating back to the mid-1970s. These included a conviction of possession of drug paraphernalia, an offense committed while the defendant was on bond in this case as well as 13 convictions of driving on a revoked or suspended

-7-

license, four convictions of driving under the influence, two convictions of resisting arrest, two convictions of public intoxication, one conviction of escape, one conviction of criminal trespass, one conviction of violating the implied consent law, one conviction of domestic battery, one conviction of adult driving while intoxicated, and one conviction of reckless driving. The report also established that the defendant was twice imprisoned for failing to pay court-ordered child support and that the defendant's previously-imposed probationary sentences had been revoked. That the defendant's previous criminal history is comprised entirely of misdemeanors does not mean it does not justify the sentence enhancement in this case. *See State v. Ramsey*, 903 S.W.2d 709, 714 (Tenn. Crim. App. 1995). Moreover, that the defendant's probation had been revoked in the past, *see* T.C.A. § 40-35-114(8), and that he incurred a new conviction of possession of drug paraphernalia while on bond in this case, *see id.* § 40-35-114(13), further justifies the imposition of the maximum sentences in this case. Finally, the defendant's possession of more than $23,000 worth of cocaine in every stage of process between powder and crack cocaine and several thousand dollars in cash during a time when he reported being unemployed supports a conclusion that the sale of illegal drugs was a major source of the defendant's livelihood. In consequence, consecutive sentencing was warranted based upon the defendant's being a professional criminal and upon his having an extensive record of criminal activity.

Because the evidence was sufficient to support the convictions in this case and because the record supports the sentencing decision of the trial court, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE