# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned On Briefs September 28, 2010 at Knoxville

## STATE OF TENNESSEE v. SEAN TERRELL HORTON

**Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3503      Cheryl Blackburn, Judge**

---

**No. M2009-02552-CCA-R3-CD - Filed November 5, 2010**

---

The defendant, Sean Terrell Horton, appeals his Davidson County Criminal Court jury convictions of possession with the intent to deliver or sell 26 grams or more of cocaine, a Class B felony, and possession of drug paraphernalia, a Class A misdemeanor. On appeal, he contends that the evidence is insufficient to support his convictions. Discerning no error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

James O. Martin, III (on appeal); and Paul Walwyn (at trial), Nashville, Tennessee, for the appellant, Sean Terrell Horton.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jeff P. Burks, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Davidson County grand jury indicted the defendant, in count one, for aggravated burglary, *see* T.C.A. § 39-14-403; in count two, for possession with the intent to deliver or sell 26 grams or more of cocaine, *see* T.C.A. § 39-17-417; in count three, for possession of drug paraphernalia, *see* T.C.A. § 39-17-425(a)(1); and, in count four, for illegal possession of a handgun, *see* T.C.A. § 39-17-1307(b)(1). The charges were based upon acts observed during a May 23, 2007 drug investigation by the Metropolitan Nashville (Metro) Police Department Narcotics Interdiction Unit. At the April 13, 2009 trial, the jury acquitted the defendant of counts one and four but convicted him as charged in counts two and three.

The trial court sentenced the defendant to 15 years' incarceration as a Range II, multiple offender for the cocaine conviction and to 11 months and 29 days for the drug paraphernalia conviction and ordered the sentences to be served concurrently. The trial court denied the timely-filed motion for new trial on October 2, 2009. However, due to the withdrawal of trial counsel, appellate counsel filed an untimely notice of appeal. This court excused the untimely filing of the notice of appeal in a December 30, 2009 order.

On May 23, 2007, Officers Thomas Spence, David Hacker, and James Hickman, who were assigned to the Narcotics Interdiction Unit of the Metro Police Department, were conducting surveillance on Thomas Street in Hermitage when they saw a vehicle "pull up." Two men approached the vehicle and moved from the driver's side to the passenger's side before approaching a nearby building. From a distance of approximately 15 yards, Officer Spence saw the first man, later identified as Eric McCathern, enter the building through a window. When the second man, later identified as the defendant, began to climb through the window, the officers decided it was time "to move forward" because they believed the men were involved in a drug transaction.

The officers approached the building with weapons drawn and asked to see the defendant's hands. The defendant made a movement behind his back as if he were placing something on the nearby windowsill. Officer Spence looked behind the defendant to find a gun on the windowsill. On the floor nearby and "in plain view," the officers found a "baggy with other baggies . . . [that] appeared to contain a large quantity of . . . crack cocaine." The defendant was arrested. Upon his arrest, the defendant had $264 "in small bills consistent with street level narcotics sales."

Once the defendant was in custody, the officers yelled into the building, and Mr. McCathern looked from a window and was taken into custody. The officers performed a "protective sweep" of the building and found it virtually empty, containing only a few chairs and some "rotted food." In addition to the approximately 30 grams of cocaine found near the defendant, the officers found another baggy in the oven which contained approximately 80 grams of cocaine. They also found "two black digital scales consistent with those that are used to process and weigh narcotics" near the smaller quantity of cocaine. The officers later learned that the property was abandoned and without electricity. They determined that the property was likely being used to conduct drug transactions.

On cross-examination, Officer Spence admitted that he did not actually witness a drug transaction but acknowledged that what he saw appeared to be "the beginnings or makings of some sort of drug transaction." Officer Spence also admitted that he neither saw the defendant reach into his pockets for any items nor did he see the defendant carrying anything in his hands before or after entering the property.

Metro Police Department Officer David Hacker was patrolling the Thomas Street area of Hermitage on foot with Officers Spence and Hickman on May 23, 2007. While watching an apartment building known as a drug buy location, they observed the defendant climbing into the window of one of the residences. Officer Hacker recalled telling the defendant to come out of the window and to "show his hands." As the defendant exited the window, Officer Hacker saw him lean back into the window sill and drop something inside the apartment. Officer Hacker went to the window where he found the handgun on the windowsill and gave it to Officer Spence. Officer Hacker recalled that the gun was loaded and that Officer Spence had to unload the handgun for safety. When Mr. McCathern looked out the window, the officers arrested him. Officer Hacker testified that, when he questioned the defendant and Mr. McCathern, "[n]either of them knew who lived [in the residence and when he] asked them what they were doing in there . . . [he] didn't get an answer from either of them."

The testimony and stipulation of the parties established the chain of custody of the evidence seized at the property.

Laura Adams, a forensic chemist with the Tennessee Bureau of Investigation (TBI), analyzed the evidence recovered from the residence. Her testing concluded that the powder-like substance was 24.5 grams of cocaine, and the rock-like substance was 40.4 grams of crack cocaine. There were four other plastic bags, weighing 41.6 grams total, containing a similar rock-like material that were not tested because of the TBI's "policy to work to the . . . sentencing cutoff."

Marilyn Clark, an employee of First Choice Property Management (First Choice), testified that First Choice managed the leasing of the residence where the defendant was arrested. She said that neither the defendant nor Mr. McCathern were listed as lessees of the residence and that neither of them had permission to enter the residence.

The defendant's girlfriend, Toni Jordan, testified that she and the defendant were planning to go to a movie on the night of his arrest. At the time of his arrest, the defendant was employed at Logan's Roadhouse at Rivergate. She said that Mr. McCathern is the defendant's cousin. On cross-examination, Ms. Jordan admitted that she had been arrested for stealing "little coupon things" from Kroger's, her former employer.

Officer Spence was recalled and clarified that there were several small "baggies" found inside one larger "baggy" near the defendant. He also said that the occupants of the vehicle who were seen talking to the defendant and Mr. McCathern were detained for questioning but eventually released. Officer Spence noted that, when booked for his arrest, the defendant did not indicate that he was employed.

The defendant testified that he was out looking for a job on the day of his arrest. At some point, he "ended up hooking up" with Mr. McCathern, his cousin. The defendant said that he missed the movie with his girlfriend and went out drinking with Mr. McCathern. He said, "Later on that night [Mr. McCathern] asked me to take him to the house so he could feed his dogs. And that's how I ended up where I was."

The defendant said that when they got to the residence it was dark. As they climbed into the window, all the police "came out of nowhere" and scared him because he "didn't know what was going on." The defendant denied having a gun, and he said that he did not see the police recover one that night. He also denied seeing any drugs. He claimed that the money found in his pocket was from his job. The defendant said he thought it was strange that Mr. McCathern was entering the residence through a window. He explained that he was drunk and did not "feel good" about the situation, so he was about to walk away when the police arrived. He denied that the officers asked who lived at the residence. The defendant recalled seeing Mr. McCathern "sitting on the ground and the dog was licking him on the face" after their arrests.

The defendant contends that the evidence is insufficient to support his convictions for possession with the intent to deliver or sell 26 grams or more of cocaine and possession of drug paraphernalia. He argues that his mere presence at a place where contraband was found is not enough to convict him. The State contends that the evidence supports the convictions.

We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 324 (1979); *State v. Winters,* 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters,* 137 S.W.3d at 654.

Although a criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State,* 505 S.W.2d 237 (Tenn. 1973); *Winters,* 137 S.W.3d at 654, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford,* 470 S.W.2d 610, 612 (Tenn. 1971). "In other words, '[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt.'" *State v. McAfee,* 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987) (quoting *Crawford,* 470

S.W.2d at 613).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters,* 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

As applicable to the present case, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance," *see* T.C.A. § 39-17-417(a)(4), and cocaine is a Schedule II controlled substance, *see id*. § 39-17-408(b)(4). Possession with the intent to deliver or sell 26 grams or more of cocaine is a Class B felony. *See id*. § 39-17-417(i)(5). Furthermore, "[i]t may be inferred from the amount of controlled substance or substances possessed by an offender, along with other relevant facts surrounding arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *See id*. § 39-17-419.

A conviction of possession of drug paraphernalia, as relevant to this case, requires proof that the defendant "possess[ed] with intent to use, drug paraphernalia to . . . pack, repack, store, contain, . . . or otherwise introduce into the human body a controlled substance." *See id*. § 39-17-425(a)(1).

Possession of drugs or drug paraphernalia may be either actual or constructive. *See State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). A person constructively possesses a controlled substance when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Id*. at 903 (quoting *State v. Patterson,* 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997) (internal quotation marks omitted)). Said differently, constructive possession is the "ability to reduce an object to actual possession." *State v. Cooper,* 736 S .W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]he mere presence of a person in an area where drugs [and other contraband] are discovered is not, alone, sufficient." *State v. Bigsby,* 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing *Cooper,* 736 S.W.2d at 129).

Indulging every presumption in favor of the State, the evidence showed that the defendant and Mr. McCathern spoke briefly to occupants of a vehicle before approaching the residence. They then climbed through a window. When approached by the officers, the defendant made a furtive gesture so as to place something behind his back or drop it to the

floor.  When officers looked at the windowsill behind the defendant, they discovered a handgun on the windowsill.  Upon further investigation, the officers found a large quantity of individually-packaged cocaine and scales on the floor near the defendant.  The defendant had $264 in small bills typical of drug transactions.  An even larger quantity of cocaine was found in the oven of the residence.  Based upon this evidence, we conclude that the evidence sufficiently established the defendant's guilt of the convicted offenses.  Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE