# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 21, 2010

## STATE OF TENNESSEE v. JASON MICHAEL FINT

**Appeal from the Criminal Court for Bradley County**
**No. M-09-016      Amy Reedy, Judge**

**No. E2010-01316-CCA-R3-CD - Filed January 21, 2011**

A Bradley County Criminal Court jury convicted the defendant, Jason Michael Fint, of one count of theft of property valued at $1,000 or more but less than $10,000.  Finding that the defendant qualified as a career offender, the trial court imposed the maximum Class D felony sentence of 12 years' incarceration.  In this appeal, the defendant challenges the sufficiency of the convicting evidence and contends that the sentence is excessive.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); and Charles G. Wright, Jr., Chattanooga, Tennessee (at trial), for the appellant, Jason Michael Fint.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; R. Steven Bebb, District Attorney General; and Stephen Hatchett, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The conviction in this case relates to the theft of several power tools from the Cleveland home of the victim, Ralph King.

At trial, Bradley County Sheriff's Office Detective Sergeant Kevin White testified that on October 21, 2008, the victim reported that several items had been taken from his home.  During the investigation, the victim telephoned the detective and told him that two

of the items, a nail gun and a staple gun, had been located at Wildwood Pawn Shop. Detective White later learned that the defendant had pawned the items. When questioned, the defendant denied stealing the items from the victim and claimed that he had purchased the items in June or July of that same year from an individual named "David" whose last name might have been "Dunn." The defendant also claimed that a previous boyfriend of Brandi McLemore, the victim's step-daughter, had stolen two chainsaws from the victim.

During cross-examination, Detective White acknowledged that none of the other items listed as stolen had been recovered. He conceded that he had never visited the scene of the theft and did not interview other individuals that had access to the area.

Brandi McLemore, the victim's step-daughter, testified that in 2008 she lived in a basement apartment of the home of her mother and the victim. During that time, she became acquainted with the defendant via "MySpace." At some point, the defendant came to stay with her for approximately one week after he and his girlfriend separated. At the time of the defendant's stay, the victim's tools were kept in an unlocked room adjacent to Ms. McLemore's basement apartment. Ms. McLemore stated that the defendant had access to the room, but she clarified that "the door was heavy and so when you opened it you would hear it jiggle."

Ms. McLemore acknowledged that the victim had previously accused another individual of stealing chainsaws from the same area. The victim did not follow through with the previous accusation. Ms. McLemore testified that she had informed an attorney representing the defendant that it was possible that David Dunn, a friend of the defendant's, had taken the tools when he stole Ms. McLemore's cellular telephone. Ms. McLemore said that she asked the defendant if he had taken the tools and that he had denied doing so.

During cross-examination, Ms. McLemore admitted that she generally left the garage door that provided access to the basement open. The door leading to the interior apartment and to the area where the tools were kept was, however, locked every night. She stated that neither she nor her three-year-old son was allowed in the room where the tools were kept. She said that the victim did not enter the room everyday. During the time that the defendant stayed in the house, he assisted the victim with the repair of a toilet and was given access to the tools for that purpose. Ms. McLemore acknowledged that a man named Michael Moore lived with her for a year, but she insisted that the tool room was "off-limits" to Mr. Moore.

The victim, Ralph King, testified that he was in the "[a]ir conditioning and sheet metal" business and that his business required the use of "a number of tools from 'Saws-all' to staple guns, you know, grinders, snips, you know, hammers." He stated that

"around the 14th or 15th of October" he noticed that several of his tools were missing. The victim recalled that in December 2007 or January 2008, one of Ms. McLemore's boyfriends had taken two chainsaws from the tool room, but he stated that those chainsaws had been replaced. He noticed that the two new chainsaws were among the items missing in October 2008. He valued the chainsaws at $150 to $200. After he noticed the missing items, he did an inventory of the room and compiled a list of all the items that were missing. A partial list of those items was admitted into evidence. The victim stated that he last recalled seeing some of the items on October 10, 2008, but that some of the items could have been missing for a longer period of time.

The victim stated that at the time the items were stolen, the only person with access to the tool room other than the members of his family was the defendant. He stated that he believed the defendant had taken the items from the tool room and that, as a result, he had kicked the defendant out of the house on the same day he made the police report. The victim recalled that the defendant denied taking any of the tools. He identified the staple gun and nail gun recovered from Wildwood Pawn Shop as belonging to him. The victim placed the total value on all of the tools stolen at $5,000.

During cross-examination, the victim stated that most of the missing items appeared to be in the room when he looked on October 10, 2008. The victim admitted that the garage door leading to the tool room stayed open most of the time and that it was visible from the street.

Following the victim's testimony, the State rested, and the defendant presented the testimony of Erica Garner. Ms. Garner testified that she and the defendant were romantically involved and that the two of them lived together from October 2007 to September 29, 2008. She stated that while she and the defendant were living together, they built a goat pen and that the defendant used the nail gun and staple gun in the construction of the goat pen. Ms. Garner said that the defendant told her that he had borrowed the tools from a friend. She said that the two often borrowed tools from the defendant's mother.

The 32-year-old defendant testified that he and Ms. McLemore became acquainted via MySpace and that the two eventually became close friends. On October 9, 2008, Ms. McLemore telephoned the defendant and asked if he could help Mr. King repair her malfunctioning toilet. He stated that he worked at the King residence from October 9 to October 12. The defendant said that he accessed Ms. McLemore's basement apartment through the garage door, which, he claimed, "was actually broken in the upright position." He stated that both Michael Moore and David Dunn, as well as numerous other friends of Ms. McLemore, had access to the room where the victim stored his tools. The defendant denied spending a week at the house, explaining that the house was "to[o] messy" and "there

was no running water downstairs."

The defendant admitted that he took the nail gun and staple gun from the victim's home, but he claimed that he did not take them "maliciously." He explained:

> I had acquired some goats. Myself and Erica had acquired some goats from friends of ours for our children, and I had had them chained up in the front yard and our youngest, Julia, who was three at the time, just turned three, she was getting injured by one of the goats who kept bucking her and kicking her and so I needed to build a goat pen, and I acquired all the necessary materials to do so, but didn't have a way to build them and so I went to Mr. King's residence but he was at work still and he didn't get home until late I was told and then he normally went straight to bed, and so instead of being patient and asking I found the items that I took in the garage, which is the main entry point, and I took those with me with the intention of bringing them back, but I never did. After I got through building the goat pens I just put them in my cabinet and left them.

The defendant also admitted pawning the nail gun and staple gun on September 4, 2008. He denied taking any of the remaining items from the victim's home. The defendant said that law enforcement officers never searched his residence or his car for the missing items. He stated that he had been into the tool room on one occasion after helping the victim repair the toilet and that he did not recall seeing any chainsaws or table saws in the room at that time.

The defendant testified that the victim had forbidden Mr. Moore from coming to the residence but that Ms. McLemore "was sneaking him in late at night after her father had turned in for the night and sneaking him out early in the morning before he left for work." He stated that Mr. Dunn was a friend of his and that he took Mr. Dunn to the victim's residence so that the two of them could smoke marijuana with Ms. McLemore. He said that after Ms. McLemore told him that she was uncomfortable around Mr. Dunn, he told Mr. Dunn to leave. On the following day, Ms. McLemore told the defendant that Mr. Dunn had taken her cellular telephone. He said that Mr. Dunn was trying to sell the telephone back to Ms. McLemore for $20. The defendant said that he and Mr. Dunn ended up in an altercation over the telephone and that he was arrested and charged with the aggravated assault of Zanesome Forbes as a result of the altercation. He said that he was incarcerated from October 13 to October 17, when the aggravated assault charge against him was dismissed.

During cross-examination, the defendant stated that he found out that the

victim's garage door was broken when Ms. McLemore's "son ran out of the house without us looking and ran across the main street down there . . . and almost got hit by a car." The defendant admitted having been previously convicted of theft on six occasions and of aggravated burglary on two occasions. The defendant insisted that he used the nail gun and staple gun, which ran on compressed air, to put together the pen for his goats and stated that he borrowed an air compressor to run the tools from his mother's boyfriend.

The defendant stated that "technically" he did steal the nail gun and the staple gun because he "took them without [the victim's] permission and did not bring them back," but he insisted that he "did not set out to steal them and keep them from him." He admitted that when initially confronted by Detective White, he denied taking the tools and instead blamed David Dunn. The defendant claimed that he warned Ms. McLemore about Mr. Moore because Mr. Moore "had gotten her on meth[amphetamine] and cocaine" and he "was trying to help her get off that stuff." The defendant nevertheless admitted using marijuana with Ms. McLemore.

Based upon the proof presented, the jury convicted the defendant of theft of property valued at $1,000 or more.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal in this court. In this appeal, the defendant challenges the sufficiency of the convicting evidence, arguing that the State failed to establish a value greater than $500, and asserts that the sentence imposed is excessive.

*I. Sufficiency of the Evidence*

The defendant claims that the evidence is insufficient to support his conviction because the State failed to establish that he stole items other than the nail gun and staple gun, which had a combined value of less than $500. He asks that this court modify his conviction of theft of property valued at $1,000 or more but less than $10,000 to a conviction of theft of property valued at less than $500. The State contends that the evidence supports the defendant's conviction. We agree with the State.

We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

Although a criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); *Winters*, 137 S.W.3d at 654, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971). "In other words, '[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt.'" *State v. McAfee*, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987) (quoting *Crawford*, 470 S.W.2d at 613).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2006). When "the property or services obtained is one thousand dollars ($1,000) or more but less than ten thousand dollars ($10,000)," the crime is a Class D felony. *See id.* § 39-14-105(3).

Here, the victim testified that several of his tools were stolen from their basement storage area. He compiled a list of the missing items and testified that their combined value exceeded $5,000. The victim stated that other than members of his immediate family, the only person with access to the tool room was the defendant, who was a friend of Ms. McLemore's. Ms. McLemore confirmed that the defendant had access to the tool room during the time frame in which the tools went missing. The defendant admitted taking a nail gun and staple gun belonging to the victim and conceded that he pawned the items on September 4, 2008. The defendant concocted a very detailed account of why he took the nail gun and staple gun and how they came to be at Wildwood Pawn Shop but denied taking the remaining tools on the victim's list. He claimed that either David Dunn or Michael Moore, both of whom were incarcerated with him in the Bradley County Jail, had likely stolen the tools. The jury, as was its prerogative, rejected the defendant's version of the offense. The record established that the defendant had access to the tool area and had pawned at least two of the tools listed by the victim as stolen. The victim stated that the fair

market value of the stolen tools was more than $5,000. This evidence supports the defendant's conviction of theft of property valued at $1,000 or more but less than $10,000.

## II. Sentencing

The defendant concedes that he had the requisite number of prior convictions to qualify as a career offender but nevertheless complains that the trial court erred by imposing the maximum Class D felony sentence of 12 years' incarceration. He additionally contends that the trial court erred by enhancing his sentence on the basis that he abused a position of trust because that factor was not supported by the record. The State asserts that because the defendant qualified as a career offender, the 12-year sentence is proper. We agree with the State.

When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing decision, the trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

Here, the defendant's five previous convictions of theft of property valued at $1,000 or more but less than $10,000, his two prior convictions of aggravated burglary, and his prior convictions of felony escape and aggravated assault qualified him as a career offender. *See id.* § 40-35-108(a)(3) ("A career offender is a defendant who has received . . . [a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony."). Indeed, the defendant does not challenge his status as a career offender. Because the defendant qualified as a career offender, the only sentence the trial court could have imposed was 12 years. *See id.* §§ 40-35-108(c) ("A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III."); 40-35-112(c)(4) ("A Range III sentence is . . . [f]or a Class D felony, not less than eight (8) nor more than twelve (12) years."). Thus, any finding of enhancement factors, even if erroneous, did not result in the imposition of the 12-year sentence in this case and would not avail the defendant any relief.

*Conclusion*

Because the evidence was sufficient to support his conviction and because the trial court imposed the only legally available sentence, the defendant is not entitled to any relief. Accordingly the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE